# CHARLESTON.

## Houseman v. Globe & Rutgers Fire Ins. Co.

### Submitted May 2, 1916. Decided June 3, 1916.

1. INSANE PERSONS—*Actions—Next Friend.*
   An insane plaintiff, for whom no committee has been appointed, may sue by next friend, and, although not expressly authorized by the court to act as such, the next friend may continue the prosecution of the suit, unless he is removed by the court. (p. 588).

2. SAME.
   Pleas in abatement, denying the right of a lunatic to sue by next friend, and challenging the fitness of the person assuming to act as such, are addressed to the court. (p. 588).

3. ABATEMENT AND REVIVAL—*Pleading—Pleas—Determination.*
   If issues are joined on pleas in abatement, and on pleas in bar, at the same time, and defendant goes to trial upon the merits, without asking that a trial on the pleas in abatement be first had, he thereby waives them. Moreover, by a decision on the merits of the case, the court impliedly overrules such pleas in abatement as present matters proper to be determined by the court. (p. 588).

4. INSURANCE—*Proofs of Loss—Waiver of Objections.*
   If the insurer, after being furnished an imperfect or incomplete proof of loss, resists payment on the sole ground that the insured was not the owner of the property, he thereby waives further proof of loss, and is estopped to set it up as a defense, when sued on the policy, notwithstanding a nonwaiver agreement entered

into to preserve the rights of the parties pending an adjustment of the loss. Such nonwaiver agreement does not preclude an estoppel on account of subsequent conduct and statements of the insurer. (p. 590).

5. SAME.

If the adjuster makes up a proof of loss from data furnished him by the insured, or his agent, which includes an itemized list of the goods saved from the fire, with the value of each item, and makes no demand that they be appraised, he thereby waives the provision in the policy relating to their appraisement. (p. 593).

6. SAME—*Forfeiture—Iron Safe Clause.*

The insured, a retail merchant, who endeavored to conduct a cash business, and who kept a book showing his last inventory and all purchases and cash sales made by him, and preserved it in an iron safe in the building containing the property insured, has substantially complied with the promissory warranty, commonly called the ''Iron Safe Clause'', notwithstanding he occasionally sold goods on short time credit and made memoranda thereof on slips of paper or cards, which he filed away in his desk, until payment therefor was made, when he immediately entered the amount in his cash account. (p. 593).

Error to Circuit Court, McDowell County.

Action by G. C. Houseman against the Globe & Rutgers Fire Insurance Company. From a judgment for plaintiff, defendant brings error.

*Affirmed.*

*Sexton & Roberts* and *Sanders & Crockett,* for plaintiff in error.

*Stokes & Sale,* for defendant in error.

WILLIAMS, PRESIDENT:

George C. Houseman, a lunatic, suing by next friend, W. H. Houseman, recovered a judgment in an action upon a fire insurance policy, and defendant seeks reversal, assigning numerous errors. Most of them present the same questions raised in the case of *Houseman* v. *Home Insurance Co.*, decided at the present term and not yet reported. The goods that were lost by fire had been insured by both companies, and the specifications of defense, as well as the material

evidence, in the two cases, are practically the same. The questions decided in the former case are elaborately discussed and fortified with numerous citations of authorities, in a carefully prepared opinion by Judge LYNCH, and it is unnecesary to burden the reports with a lengthy discussion of them here.

Defendant pleaded the general issue, filed three pleas in abatement and five written specifications of its defenses. Plaintiff replied specially to the first of the pleas in abatement, replied generally to the other two, and replied both generally and specially to the five specifications, and issues were thereon joined. A trial by jury was had, on a demurrer to plaintiff's evidence, resulting in a conditional verdict for him for $1,030. The court took time to consider of the demurrer to the evidence, and, at a subsequent term of court, found the law to be for plaintiff, and rendered judgment accordingly.

The first point is the one raised by defendant's pleas in abatement. They deny the right of plaintiff, he being an insane person and a non-resident, to bring the suit by next friend, insisting that only a legally appointed committee for him can do so, and challenge the fitness of W. H. Houseman to act as next friend, charging that he is not a responsible person and is interested in the result of the suit. It was settled in the suit above referred to that a lunatic had the right to sue by next friend when no committee had been appointed. But there the question was not raised by plea or motion to dismiss, while in this case it was raised by pleas. We hardly think that makes any difference. The pleas do not aver that a committee had ever been appointed for the insane plaintiff. They present but two questions: First, can a lunatic, who has no committee, sue by next friend? a question of law for the court, which could have been raised by demurrer, and need not be specially pleaded; and second, is W. H. Houseman a suitable person to act as next friend? a question of fact, but one for the court to decide, and which it did decide, in effect, although not expressly, by permitting W. H. Houseman to continue the prosecution of the suit. The sanction of the court was thus impliedly given; a formal

order of appointment was not necessary. The evidence is sufficient to establish his qualification. His acts were valid until he was removed. 22 Cyc. 1231; *Bird* v. *Bird,* 21 Grat. 712; and *Gray* v. *Parke,* 155 Mass. 433, 29 N. E. 641. The pleas did not present separate issues for jury trial, and, if they had, defendant waived them by going to trial on the pleas in bar without asking that trial be first had on the pleas in abatement. *Maupin* v. *Insurance Co.,* 53 W. Va. 557.

The breaches of warranties in the policy, specified and relied on as defenses, are (1) that no proof of loss was furnished; (2) that plaintiff was not the unconditional owner of the property insured; and (3) failure to separate the damaged from the undamaged goods, after the fire, and to protect them from further injury. Plaintiff replied both generally and specially and issues were thereon joined.

The fire occurred at Anawalt on November 25, 1913, and immediately thereafter W. H. Houseman, who was in charge of the store, wrote the Flat Top Insurance Agency, at Bluefield, which represented defendant, notifying it of the fire. Within a few days thereafter J. F. Hurt, the adjuster for the insurers, came to Anawalt to adjust the loss. W. H. Houseman swears that he and Hurt went to the bank and got permission of the cashier to use a back room in the bank building, and together they went over, in detail, all of plaintiff's inventories, daily reports and bank accounts, and footed them up on an adding machine; that Hurt and he then made out the proof of loss together, the latter filling in the blanks and putting down the figures; that the proof was made out on a regular blank form; that Hurt or W. P. Fisher, who was with him, then swore him to it; and that it was all satisfactory to Hurt, except two or three bills which had been destroyed in the fire and had not been posted, but the correct amount of which, "to the dollar," he gave from memory. He says Hurt made no objection to the proof thus made out, and that he has not seen the paper since it was delivered to him. The loss was not total, about $2,300 worth of goods was saved from the fire. Plaintiff swears that the stock of goods was worth on July 1, 1913, $5,643.62, as shown by an inventory then taken; that after that time, and before the

fire $6,817.14 worth of goods were added to the stock, and $4,235.95 had been sold, thus showing the value of the goods, at the time of the fire, to be something over $8,000, from which is deducted the cost of the goods saved from the fire, less 25% on account of damage, making plaintiff's net loss something over $6,000. He was insured by four different companies to the aggregate amount of $3,500.

The defenses chiefly relied on is that plaintiff was not the sole owner of the goods. After Hurt went to Anawalt to adjust the loss, there was some correspondence between him and W. H. Houseman, concerning goods purchased since the last inventory. Houseman says Hurt desired him to obtain copies of the bills and furnish them to him. Houseman says he got them and made a trip to Bluefield to see Hurt, but did not get to transact any business, as Hurt said he had to leave town on other business, and he mailed the papers to him later. Some of Hurt's letters are addressed to George C. Houseman and some to W. H. Houseman, but all of them were received and answered by the latter, either in his own name or in the name of his father, George C. Houseman, by himself as agent. In a letter to George C. Houseman of December 30, 1913, Hurt writes: ''The main trouble regarding your loss, is the ownership of the property.'' Under same date he wrote plaintiff as follows: ''In taking up this loss under a nonwaiver agreement, it developed that you had no interest in any of this property, but that your son W. H. Houseman, was the sole and unconditional owner of this property. I submitted these facts to the above interested Insurance Companies, and they have requested me to advise you that if you feel that you have any claim against them, that you are referred to the conditions of your policy contracts, and they hereby give you notice of their intent to insist, and do hereby insist, upon a full compliance with all the conditions of their policy contracts. I return herewith, the inventory of the merchandise which you saved from your store, as well as the list of your house-hold furniture which you furnished me.'' And again, on the 15th of January, 1914, he wrote George C. Houseman, in reply to a letter of the 10th, in which he requested George C. Houseman to

furnish him a sworn statement, showing just what interest he had in the stock of merchandise, fixtures, etc., and says, if such statement is furnished, "I will promptly advise you just what position the companies will take with reference to this matter." This correspondence was had within two months after the fire, and after Hurt had gone to Anawalt to adjust the loss, and it is convincing evidence that the sole ground of resistance, then urged, to a settlement of plaintiff's claim, was that his son W. H. Houseman, and not he, was the owner of the goods. Up to that time there is no intimation that any other provision or warranty in the policy had been violated. In one of his letters of December 30, Hurt says he submitted these facts to "the above interested Insurance Companies," and, presumably, he submitted what evidence he had been able to discover to prove plaintiff was not the owner. The heading of the letter shows that defendant was one of the companies referred to. Having denied liability on the sole ground that George C. Houseman was not the unconditional owner of the property, defendant is estopped, when it is thereafter sued, to set up failure to prove loss. It is deemed in law to have waived that defense, of which it had knowledge. *Houseman* v. *Home Insurance Co., supra,* and cases cited at page 5 of the opinion. Assuming W. H. Houseman's testimony to be true, he was evidently misled, by the conduct and statements of Hurt, into the belief that no further proof of loss was demanded. Nor does the nonwaiver agreement, entered into on December 2nd, when Hurt went to Anawalt to adjust the loss prevent the estoppel. The correspondence, charging that plaintiff was not the owner, was had after that time. It only provides that the investigation, upon which the adjuster is about to enter, shall not be a waiver, and was not intended to apply to subsequent acts and statements relating to other matters. It was designed to preserve, *in statu quo,* the rights of the parties, pending the adjuster's investigation into the cause of the fire and the amount of loss, and to prevent his acts and conduct in respect thereto from operating as a waiver of any of defendant's rights under the insurance contract. "A nonwaiver agreement signed by a policy holder after a loss, the purpose of which

is to enable the agent of the company to negotiate with regard to the facts of the loss, value of property, etc., without any waiver by the company of its right to contest its liability, is not to be extended by construction beyond its terms, and does not prevent the company from being bound by its statement, made after it had fully investigated the facts, of the grounds on which it denied liability, and which it also set up as its original defense in an action on the policy; and it is estopped to plead additional defenses on the eve of trial.'' *Pennsylvania Fire Ins. Co.* v. *Hughes,* 108 Fed. 497.

The case was tried upon a demurrer to the evidence. W. H. Houseman swears he was managing the store for George C. Houseman, his father; that it was his father's property, and the business was carried on in his father's name; that his father had furnished $1,500 with which to begin the business, under an oral contract with the witness that he could purchase the property, at any time he became able to do so, by paying his father the $1,500 with interest. If true, this testimony proves that plaintiff was the unconditional owner. The contract to sell to his son was not a condition affecting plaintiff's title. *Houseman* v. *Home Insurance Co., supra,* and authorities cited in opinion at page 8. In addition to the authorities there cited, see also the following: Cooley's Briefs on Ins. Law, 1383; *Brunswick etc. Co.* v. *Northern Assurance Co.,* 142 Mich. 29; and *Burson* v. *Fire Association,* 136 Pa. St. 267. These cases hold that a warranty of sole and unconditional ownership of goods is not broken by a conditional sale contract, reserving title in vendor until the conditions are complied with. There are some apparent inconsistencies in the testimony of W. H. Houseman, but the foregoing is a fair interpretation of it. That arrangement gave W. H. Houseman the profits, which appear to have been considerable, only in the event he complied with the contract, which he seems not to have done. Notwithstanding the great conflict in the testimony, the jury would have had a right to accept W. H. Houseman's testimony as true, and, on the demurrer to plaintiff's evidence we must give to it such weight and effect as a jury would have been justified in giving it.

The alleged defense that the goods saved from the fire were not separated, the damaged from the undamaged, and the value thereof appraised in the manner provided in the policy seems to have been abandoned, as no reference is made to it in brief of counsel. Their brief is devoted chiefly to a discussion of the evidence relating to ownership of the goods and proof of loss. Appraisement is material, of course, in ascertaining the loss, when there is disagreement as to the value of the goods saved; otherwise it is not an indispensable provision. It was a part of the adjuster's duty to ascertain their value, and, if the insured was satisfied with his estimate of it, no appraisement was necessary. Appraisement was necessary only when demanded by one or the other of the contracting parties. When Hurt went to adjust the loss, Houseman furnished him with an itemized list of the goods which had not been destroyed, together with the cost of each item, and no objection was then made to it, and no appraisement was demanded by him on behalf of defendant until July, 1914, months after the controversy over the ownership of the property had arisen. The principle of waiver applies to this, as well as to the defense relating to proof of loss, and defendant is now estopped to set it up for the same reason.

Counsel for defendant urge in their brief that plaintiff failed to comply with the "Iron Safe Clause," which required the insured to keep a set of books showing a complete record of the business transacted, and to preserve them in an iron safe, or in some place not exposed to a fire that would destroy the building containing the insured goods, and which provided that a failure to produce such set of books for inspection by the insurer shall avoid the policy and bar recovery thereon. The purpose of this promissory warranty is to preserve a record of the last inventory, and of the purchases and sales thereafter made, as the best evidence in ascertaining the amount of loss. When it is attached to the policy, as is usually the case, it becomes an essential part of it, and the courts uniformly hold it to be a reasonable provision and must be substantially complied with. But plaintiff contends it has not been specified as a defense. In its fifth

specification defendant says: "The defense in the above entitled action is, among other things, that the action cannot be maintained because of the failure to perform and comply with, and the violation of, certain clauses, conditions, and warranties, contained in the policy sued on, and the defendant here specifies as the particular clauses, conditions and warranties in the policy in this case sued on contained. in respect to which such failure or violation is claimed to have occurred:", it then quotes literally the terms of the policy from line 67 to line 76, both inclusive, which relate to the notice to be given in case of fire, the care of property that is saved from the fire, and proof of loss. It then passes to line 106 of the policy and, under a side heading designated "Second," quotes lines 106 and 107, which provide that no suit shall be maintainable on the policy "until after full compliance by the insured with all the foregoing requirements." It then assigns numerous reasons why proof of loss was not furnished, one of which is that plaintiff did not keep a set of books showing an account of his purchases and sales as required by the "Iron Safe Clause" of the policy. It would be highly technical to say that this did not inform plaintiff of its reliance, as a defense, on the breach of that provision. It is not strictly a pleading, but only a specification of defense, to which we have held a demurrer does not lie as in the case of a regular plea. *Rosenthal Co. v. Scottish Ins. Co.,* 55 W. Va. 238. A substantial compliance with this promissory warranty is all the law requires, and we think the evidence proves that plaintiff did substantially comply with it in this case. He kept, in an iron safe, a book showing his purchases and his cash sales, and says he endeavored to do a cash business. He says a few of his customers would sometimes purchase goods, when they did not have the ready cash to pay for them, and he would, in every such instance, make a memorandum of the transaction on a slip of paper or card, and file it away in his desk, until the amount was paid and he would then, immediately, enter it in his cash book. At the time the fire occurred plaintiff had on hand about $500 of these slips, which were burned. Plaintiff says he had forgotten these slips, at the time he

furnished the adjuster the data from which he says the proof of loss was made up, but that his attention was later called to them when some of the customers came to him and paid them, he then deducted the amount of them from his estimated loss. This is the only respect in which it appears that plaintiff failed to comply literally with the iron safe clause. He preserved a complete inventory, and was able also to furnish, and did furnish a complete list of all goods purchased since the date of his last inventory, and also all cash sales. Plaintiff says he was endeavoring to do a cash business, and proves that he acted in good faith in trying to preserve a complete record of every transaction. The fact that a comparatively small part of his sales were kept on slips of paper or cards does not show a substantial breach of the iron safe clause. It has been held that where the insured, a country merchant, received produce in exchange for goods and made no entry thereof until the produce was sold and the proceeds went to swell the cash account, there was no substantial departure from the iron safe clause. *Meyer Bros.* v. *Insurance Co.,* 73 Mo. App. 166. The following authorities hold that a substantial compliance is all that is required: 2 Cooley's Brief on Ins. Law, 1818; *Liverpool &c. Ins. Co.* v. *Kearney,* 180 U. S. 132; and *Western Assurance Co.* v. *Mc-Glathery,* 115 Ala. 213, 67 Am. St. 261.

The books need not be such as would be kept by an expert accountant in a large business. *Prudential Fire Ins. Co.* v. *Alley,* 104 Va. 356; and *Burnett* v. *Insurance Co.,* 68 Mo. App. 343.

The Judgment is affirmed.

*Affirmed.*