# CHARLESTON.

PAULEY *et al.* v. SUN INSURANCE OFFICE.

Submitted October 18, 1916.   Decided October 31, 1916.

1. INSURANCE—*Proof of Loss—Waiver—Denial of Liability.*
   Denial of liability by the insurer, within the time allowed the insured to furnish proof of loss, on the ground that the policy has been canceled, is a waiver of such proof.   (p. 189).

2. SAME—*Agent—Authority of Agent.*
   An agency to procure insurance does not imply a continuance of such agency, after the policy has been delivered to the insured, for the purpose of canceling it or receiving notice of cancellation.   (p. 190).

3. SAME—*Warranties—Sole and Unconditional Ownership.*
   The existence of a vendor's lien upon a house insured against loss by fire does not constitute a breach of a warranty that the insured is the sole and unconditional owner thereof.   (p. 191).

4.  SAME—*Warranties—Iron Safe Clause.*

> The production of a set of books, kept by a retail merchant, showing a complete inventory of the stock of goods on hand, taken three days before the date of the policy, and an itemized account of the goods purchased and added thereto between the date of the inventory and the date of the loss, together with an account of the amounts of daily sales, cash and credit mingled, entered at the close of each day's business, although not showing the items sold nor distinguishing between the cash and credit sales, is, nevertheless, a substantial compliance with what is termed the iron safe clause in a standard fire insurance policy.  (p. 192).

Error to Circuit Court, Kanawha County.

Action by P. R. and R. D. Pauley, partners under the name of P. R. Pauley & Son, against the Sun Insurance Office. Judgment for plaintiffs, and defendant brings error.

                                                    *Affirmed.*

*W. T. Porter,* for plaintiff in error.

*Payne, Minor & Bouchelle* and *Francis W. Payne,* for defendants in error.

WILLIAMS, PRESIDENT:

P. R. Pauley and R. D. Pauley, partners doing business as P. R. Pauley & Son, recovered judgment against the Sun Insurance Office, a corporation, in an action upon a fire insurance policy and it obtained this writ of error.

The property was insured for the term of one year from noon on the 18th of January, 1915, and consisted of one frame building, situate at Holly Hurst Station on the Coal River Division of the Chesapeake & Ohio Railway, occupied as a general store, and the stock of. merchandise therein.  The building was insured for $600.00 and the stock of merchandise for $1,400.00, and both were destroyed by fire on the 30th of January, 1915, about eight o'clock in the morning.

The following defenses were pleaded, viz.:  (1) failure to furnish proof of loss; (2) cancellation of the policy before the fire occurred; (3) that insured were not the sole and unconditional owners of the property; (4) failure to comply with the iron safe clause; (5) over-insurance and reliance upon the three-fourths value clause of the policy; and (6) an amend-

ment to the five first-mentioned pleas, averring that plaintiffs had been engaged in the mercantile business for more than twelve months, at the same place, prior to the issuing of the policy sued on, and had furnished defendant with but one inventory of their stock of merchandise, which was said to have been taken on the 15th of January, 1915, whereas, it is averred they were required by the policy to furnish defendant, for its inspection, an inventory next prior to that one.

Plaintiffs replied specially to the foregoing pleas as follows:   (1) that proof of loss was waived by denying liability on the ground that the policy had been cancelled; (2) that if there was any attempt to cancel the policy it was ineffective, because no notice thereof was given to plaintiffs, whereas the policy provided they should have five days notice; (3) deny they are not the sole and unconditional owners of the property, but admit the existence of a vendor's lien on the house and lot, at the time of the fire, for $200.00, the unpaid portion of the purchase price of $1,000.00 which they had agreed to pay, $800.00 of which they aver they had paid; (4) aver facts which, they insist, show a substantial compliance with the iron safe clause; deny the property was over-insured; and (6), replying to defendant's sixth or amended plea, they aver, that the taking of a complete inventory on the 15th of January, 1915, was a full compliance with that clause of the policy relating to the taking of inventories, and that the thirty days time allowed them in which to make an inventory, after the issuance of the policy, had not expired when the fire occurred.   Defendant also demurred to the declaration and pleaded the general issue.   The demurrer was overruled, and, on the issues joined on the aforesaid pleas, a trial was had by jury, resulting in a verdict for plaintiffs for $1,777.75, on which the court entered judgment.

Defendant offered no evidence and moved the court to exclude plaintiffs' evidence and direct a verdict for it, which motion the court overruled, and this is assigned as error.   A consideration of this assignment necessitates an examination of the evidence to ascertain if any of defendant's numerous pleas is supported by proof.

First, as to its plea that there was no proof of loss, plaintiffs

do not pretend to have furnished any, and insist that defendant waived compliance with that provision of the policy relating thereto by a denial of liability on the alleged ground that it had cancelled the policy. It is proven and not denied that plaintiffs notified Jones & Winkler, local agents of defendant, at Charleston, West Virginia, by telephone of their loss, on the day the fire occurred, and, at their request, R. D. Pauley went to Charleston to see them, on the 2nd of February, 1915, and then learned for the first time of the alleged cancellation of the policy. Both of the plaintiffs testified that Jones, a member of Jones & Winkler, then told them that the policy had been cancelled and they had insured them in the Connecticut Company. One of them testified that Jones said he wrote them informing them that the policy was cancelled and requesting them to return it. This constituted a waiver of proof of loss. Denial of liability on other grounds is a waiver of proof of loss. *Houseman* v. *Home Ins. Co.*, 78 W. Va. 203, 88 S. E. 1048; *Houseman* v. *Globe & Rutgers Ins. Co.*, 78 W. Va. 586, 89 S. E. 269; *Medley* v. *Ins. Co.*, 55 W. Va. 342; and *Sheppard* v. *Peabody Ins. Co.*, 21 W. Va. 368.

The policy provided that the insurer might cancel it by giving five days notice thereof and returning the unearned premium. Jones & Winkler rendered their bill against plaintiffs for the premium on the policy sued on, bearing date January 18, 1915, and this bill was paid by plaintiffs' check, drawn to the order of Jones & Winkler on the Kanawha Valley Bank, dated February 2, 1915, which was indorsed and collected by them on the following day. Plaintiffs received no notice and did not return the policy. Counsel for defendant insists that Jones & Winkler were the general agents of plaintiffs, with implied power to waive notice, and that notice to them was notice to plaintiffs. While the law permits an insurance broker, or agency, to occupy a dual agency, in respect to terminating, as well as procuring insurance contracts, his power to cancel the contract is not to be implied from his agency to procure it, nor is it to be lightly inferred from previous dealings between the parties. Although it is proven that P. R. Pauley, the senior member of the firm, had dealt with Jones

& Winkler for a number of years, and had procured insurance through them upon other property, and sometimes permitted them to re-write insurance without special request, there is no proof that they ever before undertook to cancel a policy, or claimed the right to do so. So far as the record discloses all policies previously written were permitted to run their full time. The policy sued on was procured on the personal application of R. D. Pauley who is jointly interested with P. R. Pauley, his father, in the property insured, and this is the first time he ever had Jones & Winkler to insure any property for him. Jones & Winkler represented defendant company and other insurance companies, and was permitted by R. D. Pauley, the junior member of the firm of Pauley & Son, who applied for the insurance, to select the company to take the risk. The previous dealings between Jones & Winkler and these plaintiffs do not warrant the inference that the former were the general agents of the latter for the purpose of cancelling their policy. An agency to procure insurance does not imply a continuation of the agency for the purpose of cancelling the contract of insurance. Such agency terminates when the policy is delivered. "As a general rule, an agency to procure insurance is not, as a matter of law, presumed to continue for the purpose of canceling the insurance procured, or of receiving notice of such cancellation. Such an agency terminates when the insurance is procured, and the policy delivered to the principal." 3 Cooley's Insurance Briefs, 2797. The text is supported by the following decisions: *Mutual Assurance Society* v. *Scottish Union & National Ins. Co.,* 84 Va. 116. The Virginia court held that the broker was the agent only for the purpose of procuring the policy, and not to receive notice of its cancellation, notwithstanding a provision in the policy that the broker who obtained the policy should be considered the agent of the assured and not of the company. The court cited with approval the case of *Herman* v. *Niagara Fire Ins. Co.,* 100 N. Y. 411, announcing the same principle on a similar state of facts. See also *Grace* v. *American Central Ins. Co.,* 109 U. S. 278, a case directly in point.

The only evidence to support defendant's third plea, that

plaintiffs were not the sole and unconditional owners of the property insured, is plaintiffs admission that there was a vendor's lien upon the house and lot for $200.00, which was the remainder of the purchase price of $1,000.00. This did not constitute a breach of the warranty that plaintiffs were the sole and unconditional owners. Title was vested in them, and a mere lien, whether a vendor's lien, mortgage, deed of trust, or judgment lien, does not constitute a condition affecting their title. Richards on Insurance, (3rd ed.), Sec. 259; 2 Cooley's Insurance Briefs, 1354 and 1356; and *Wolpert* v. *Northern Assurance Co.*, 44 W. Va. 734.

As to the alleged failure to comply with the iron safe clause, it is established that plaintiffs kept their books of account in their dwelling house, and produced them at the trial. They contained a complete inventory, taken on the 15th of January, 1915, of the stock of merchandise then in the building, and also an account of the goods thereafter purchased and mingled with the others, and also an account of the amount of daily sales, but not of items sold, which were shown to have been entered in the book at the close of each day's business. These accounts included the cash and credit sales under the same head, the average daily sales amounting to twelve or thirteen dolars. It was thus shown that the total cash and credit sales, from the time the invoice was taken until the fire occurred, aggregated $132.97. It was plaintiffs' custom, in making sales on credit, to write the same on duplicate slips, one of which they gave to the customer and the other they retained and filed away in a drawer. These were destroyed by the fire. It is insisted that this manner of keeping the sales account shows a breach of the promissory warranty, to "keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of inventory, as provided for in the first section of this clause, and during the continuance of this policy." The purpose of this provision is to preserve a correct account of the business done in order that the value of the stock of goods on hand, at any time during the continuance of the policy, may be known, and the amount of loss thus ascertained. The

manner of keeping the account, while it does not show the particular articles sold, nor distinguish between cash and credit sales, shows as accurately the value of the goods sold as if it had been kept strictly according to the letter of the contract, and is a substantial compliance therewith. *Houseman* v. *Globe & Rutgers Ins. Co., supra,* and *Tucker* v. *Fire Ins. Co.,* 58 W. Va. 30. With the inventory and the accounts thus kept it was an easy matter to ascertain the loss. The inventory amounted to $1,463.84. After it was taken and before the 30th of January, when the fire occurred, plaintiffs purchased goods from the Hubbard Grocery Company amounting to $40.64, and goods from the Charleston Milling & Produce Company amounting to $114.82, and the bills for these goods, showing the items and the value of each, were introduced in evidence. The aggregate of each day's sales, from the 16th to the 29th of January, inclusive, kept in the manner stated, was $132.97, and this amount deducted from the amount of the invoice, plus the value of the goods shown to have been purchased and added to the stock, gives the exact amount of plaintiffs' loss upon the stock of merchandise.

The production of the inventory, taken on the 15th of January, three days before the policy was written, is a full compliance with the provision of the policy relating thereto. Even if there had been no inventory taken within twelve months next prior to the date of the policy, plaintiffs were given, by the terms of the policy, thirty days after its issuance within which to take an inventory, and that time had not expired when the fire occurred. The third clause of the iron safe provision required plaintiff to "keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventory in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this Company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." Inventories were taken prior

to the 15th of January, 1915, but were not preserved. The preservation of the one taken on the 15th of January, only three days before the issuance of the policy, rendered unimportant the production of earlier inventories. Plaintiffs were not bound to take an inventory before the date of the policy, although they did so. The words "such  *  *  inventory," used in the first line above quoted, refer to the inventory provided for in section 1 of the iron safe clause. That clause required the insured. to take one at least once in each calendar year, and provided, that if none had been taken, one should be taken within thirty days after the issuance of the policy, and further provided that, in case of a failure to do so, the policy should become null and void. The inventory produced at the trial proved a full compliance with this provision of the policy.

There is no evidence to support the fifth plea.

The point raised by the sixth plea is disposed of by our holding in respect to defendant's fourth plea.

The jury were instructed in accordance with the principles herein announced, and the judgment is affirmed.

*Affirmed.*