# CHARLESTON.

GEORGE ALBERT v COLONIAL FIRE UNDERWRITERS OF HARTFORD, CONN.

Sumbitted April 6, 1920.    Decided April 13, 1920.

1. INSURANCE—*Iron Safe Clause Must be Substantially Complied With.*

The promissory warranty commonly called the "iron safe clause" in a fire insurance policy covering a stock of merchandise is a material provision of the contract of insurance, as the method adopted by the contracting parties of determining the amount of loss, and must be substantially complied with. (p. 205).

2. SAME—*Insured Held not to Have Substantially Complied With Iron Safe Clause.*

Where the insured takes no inventory of his stock in store, except at the beginning of business about three months before the date of his policy, and thereafter at various times adds largely to his stock by new purchases, and continues all the time to make sales therefrom at retail, keeping his accounts of such sales on slips which are destroyed at the end of each week and only the figures showing the amounts of weekly sales are transcribed into a book, he has not substantially complied with the iron safe clause and his policy is thereby rendered void. (p. 206).

Error to Circuit Court, Marshall County.

Action by George Albert against the Colonial Fire Underwriters of Hartford, Conn. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Martin Brown* and *A. L. Hooton,* for plaintiff in error.

*Chas. A. Showacre* and *James T. Miller,* for defendant in error.

WILLIAMS, PRESIDENT:

This action was brought by George Albert to recover on a fire insurance policy for the destruction by fire on January 2, 1918, of goods in a retail store in the city of Moundsville. The defendant filed its written specification of defenses and also pleaded non-assumpsit. After the plaintiff had introduced all of his evidence the court, at the motion of the defendant, directed the jury to return a verdict for the defendant, and after overruling plaintiff's motion to set it aside, entered judgment thereon. Plaintiff brings the case here on writ of error, his counsel contending that the court erred in not allowing the case to go to the jury on his evidence, as being sufficient to show a substantial compliance with the provisions and warranties in the policy. The only question we need consider is whether or not plaintiff's evidence shows a substantial compliance with what is called the Iron Safe Clause. That it is a material promissory warranty with which the insured must comply substantially, has been so frequently decided by the courts of this and other states of the Union, that citation of authority for the proposition is hardly necessary. The policy was for $1000.00. and covered a stock of goods, consisting of gent's furnishings, clothing, shoes, hats, trunks and other goods usual to the clothing business, while contained in a frame building situate on the west side of Jefferson Avenue, Moundsville, W. Va., from noon on the 18th of August, 1917, to noon on August 18, 1918. The goods were destroyed by fire on the 2nd day of January, 1918. The policy permitted other insurance, and plaintiff carried $5,500.00 additional insurance on the same stock of goods. The principal defense is that plaintiff failed to comply with the promissory warranty called the Iron Safe Clause. It required the assured

to take a "complete itemized inventory of stock on hand at least once in each calendar year," and, unless he had taken such inventory within twelve months prior to the date of the policy, he was required to take one in thirty days thereafter, else the policy should be void from and after that time. He was also required to keep a set of books, "which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory," which books and inventory he was required to keep locked in a fire-proof safe, or in some place not exposed to fire which might destroy the building in which the goods were kept. We think plaintiff has failed to comply with these covenants.

He proved that he sold to Sam George a stock of goods amounting to $3546.24, on or about May 10, 1917. These goods were furnished from plaintiff's retail store situate on the east side of Jefferson Ave., carried across the street and placed in another building on the west side of said avenue. He did furnish at the trial a complete itemized list of the goods he had sold to Sam George. Sam George then began a retail mercantile business on his own account in this building and continued the business until the 9th. of July, 1917, when, according to the testimony of both Sam George and the plaintiff, finding he was not successful, plaintiff bought the stock of goods back from him. In this transaction only $46.00 in cash changed hands between the plaintiff and said George. On the 18th of August, following his re-purchase of the goods from George, plaintiff procured the contract of insurance here sued on, and continued to carry on the retail mercantile business in the two buildings, situate on opposite sides of the street. He maintained a clerk by the name of Floyd Smith to conduct the sales in the store formerly occupied by George, until the time of the fire, and sometimes personally made sales therefrom. Smith began working for George when George purchased the goods from plaintiff and continued with him while he owned the store, and also remained in the store and worked for plaintiff, selling goods up until the fire occurred, but he kept an itemized account of sales made by him, only from August 4th to December 31st, 1917. This account Smith says he kept at the request of plain-

tiff for the purpose of showing the sales made by himself, and not to show a complete history of all the sales in the store. During the time Smith was clerk, plaintiff himself also made sales of which Smith says he kept no account. Plaintiff's only method of keeping an account of sales was by means of slips, on which each sale was noted, and at the end of each week the total amount of sales for the week was ascertained, and the total then transcribed simply as a cash item, into a book kept for that purpose. This book was produced and it showed that the total amount of all sales from the time the store was opened by Sam George in May, 1917, down to the 31st of December, 1917, a period of more than seven months, was $950.93. A calculation shows that for this period of 200 secular days the average daily sales amounted to less than $5.00. Yet during that period of time plaintiff claims he purchased and added to the stock originally sold to Sam George, other goods to the value of over $7,000, as appears by an itemized account of the stock of goods furnished by plaintiff to defendant under that provision of the policy requiring proof of loss to be furnished the company within sixty days from the date of loss. But in his testimony he admits he took no inventory of the stock of goods in the store at any time. He endeavored to show compliance with the Iron Safe Clause, by producing some of the bills and a duplication of others rendered to him by wholesale merchants for goods which he swears were put in the store that was burned. Some of these were purchased during the time Sam George ran the store and some were purchased after plaintiff re-purchased the store from George. He did not keep an itemized account of sales during any part of the time he conducted the store, except the one kept by the clerk Floyd Smith, which was incomplete. Plaintiff kept his account of sales on slips which were destroyed at the end of each week, and the gross amount of the weekly sales then transferred to a book. This book was produced and it showed the total amount of sales from May 26 to December 31, 1917 to be only about $950.00. The facts in this case are very similar to the facts in the case of *Fisher* v, *Sun Insurance Co.,* '4 W. Va. 694, wherein we held that such method of keeping ccounts and such means of supplying an inventory of the stock f goods did not show a substantial compliance with the Iron

Safe Clause and, therefore, avoided the policy. This case is governed by the principles of that case and cases cited in the opinion at pp. 698 and 699, to which we adhere as being sound and we therefore affirm the judgment.

*Affirmed.*