H. KELMENSON *v.* BRITISH AMERICA ASSURANCE COMPANY

(No. 7599)

Submitted November 7, 1933. Decided November 28, 1933.

*Steptoe & Johnson, Stanley C. Morris* and *J. Hornor Davis, 2nd,* for plaintiff in error.

*F. R. Hill* and *A. P. Edgar,* for defendant in error.

HATCHER, JUDGE:

This is an action to recover insurance on wool consumed or damaged by fire. The plaintiff obtained a judgment for $4,000.00, the full amount of the policy, and the defendant was allowed a writ of error.

The defendant introduced no evidence, and does not controvert plaintiff's loss of a quantity of wool by fire. The major defense is that the inventory made and the books kept by plaintiff do not comply with the "iron safe clause" of the policy. That clause is the conventional one requiring "a complete itemized inventory of stock on hand"; and that the insured will keep a set of books "which shall clearly and plainly present a complete record *of business transacted,* including all purchases, sales and shipments *from date of inventory",* etc. (the italics are ours).

The plaintiff is a small town merchant. The policy was issued to him on February 27, 1932, and insured against loss and damage by fire "Wool, loose, in bales, bundles or bags" while kept in the building occupied by plaintiff as a store, etc. The wool in question was bought in 1931 and was ungraded. In June and July of that year, the wool was packed in bags

which were numbered and weighed by plaintiff and then stored in the warerooms of his store house. The total number of bags was 146 and the total weight of the wool (after allowance for tare) was 23,539 pounds. The number and weight of each bag was entered on loose ledger sheets by the plaintiff about July 15, 1931. Those ledger sheets were introduced in evidence. The defendant's brief criticizes the sheets as follows: "The purported inventory is undated. It nowhere contains any entries explaining any of the figures. In other words, to make the paper intelligible at all it is necessary for the plaintiff to explain by parol that the entry '1 150' means 'one bag of wool, weight 150 pounds', and so on for every entry on the paper." The law prescribes no particular system of making an inventory. The insured is permitted to record the inventory in his own way and to explain his system. If the stock of wool on hand is ascertainable from the records of the plaintiff "with the assistance of those who kept them", the stipulation for an inventory is satisfied. *Liverpool Ins. Co.* v. *Ellington,* 94 Ga. 785, 21 S. E. 1006; *Prudential Co.* v. *Alley,* 104 Va. 356, 51 S. E. 812; *Olson* v. *Cas. Co.,* 149 Minn. 353, 183 N. W. 826; Couch, Insurance, secs. 1032, 1032a. The brief would also make a point of the fact that "the purported inventory does not show the cost price of the different grades of wool nor the respective grades of wool therein contained." We see no significance to this point as all of plaintiff's transactions in wool were in bulk, and that in his warerooms (the wool insured) had never been graded and grading was not intended. The policy expressly contemplated that the wool might be kept in bags. Defendant does not suggest and we do not know of a more practicable way of itemizing a quantity of ungraded wool than that practiced by plaintiff.

"The bookkeeping required by the iron safe clause in fire insurance policies begins from the date of the inventory which the assured is required to take." *Homestead Ins. Co.* v. *Ison,* 110 Va. 18, 65 S. E. 463. That ruling is but an amplification of the phrase in the clause "from date of inventory". In the instant case, there was no bookkeeping to begin after the wool was weighed and stored in plaintiff's warerooms. The plaintiff testified without contradiction that the 146 bags were not increased by *purchases* or diminished by *sales and ship-*

*ments,* after that time, but remained intact and unchanged until the fire. Consequently there was no "business transacted" in relation to the wool in question and nothing to record in "a set of books" beyond the list of bags, etc., except the value of the wool. Plaintiff did mention shipping certain wool from "the house", and defendant's brief assumes that such shipments were made from the store warerooms. The context of the record shows, however, that "the house" plaintiff then referred to was the Carter building, a block distant from his store warerooms. Plaintiff also referred to shipping certain wool from a warehouse after the inventory was made. Defendant's brief seizes on that statement to discredit plaintiff's testimony but the context shows plainly that plaintiff again referred to the Carter building. The wool stored in or shipped from the Carter building has nothing to do with this case, since only the wool contained in the warerooms of plaintiff's store building was covered by the policy.

Plaintiff introduced in evidence another ledger sheet and a casual memorandum in pencil, both prepared before the fire. The sheet purported to be a summary of his entire transactions in wool during the year 1931. The summary shows that his entire purchases amounted to 44,264 pounds and his entire shipments amounted to 21,638 pounds, leaving a balance on hand (the wool in his warerooms) of 22,626 pounds. *The summary also contains the cost of every purchase, from which it appears that the average cost of the wool per pound was between 17 and 18 cents.* The memorandum contains only a partial list of plaintiff's transactions in wool and shows a balance of 22,748 pounds on hand. An error in computation is apparent on the face of the memo which when corrected would make the balance on that paper 22,638 and reduce the difference between the balance on the summary (22,626) and the one on the memo to 12 pounds—a difference which is negligible. The defendant's brief contends that the summary and the memo are not complete records of plaintiff's wool business for 1931, and do not comply with the provision of the policy requiring a set of books to be kept. Many decisions are cited. It is obvious that the memo furnished by plaintiff is not a complete record; but his summary is substantially complete. The decisions of courts of last resort are not in

harmony on the degree of compliance demanded by the iron safe clause. Some courts exact strict compliance, while others, *comprising the decided weight of authority,* require only a substantial compliance with the clause. Couch, Insurance, sec. 1026; Cooley, Insurance (2d Ed.), p. 2802. The citations in defendant's brief are largely from courts which enforce the minority rule. Those citations are not persuasive on us, as this Court is committed to the substantial compliance doctrine. *Houseman* v. *Ins. Co.,* 78 W. Va. 586, 595, 89 S. E. 269; *Pauley* v. *Ins. Office,* 79 W. Va. 187, 193, 90 S. E. 552; *Albert* v. *Underwriters,* 86 W. Va. 204, 102 S. E. 859.

The defendant does not claim to have made any actual effort to test the accuracy of plaintiff's records, and to have failed because of insufficient or unintelligible data. No witness testified that he could not have ascertained from plaintiff's records the amount of wool in the store warerooms at the time of the fire. The strictures in defendant's brief are purely theoretical. It is immaterial that an inventory is "not so full and particular as might be expected or desired" provided it is sufficient to inform the insurance company "with reasonable certainty" of the quantity and value of the goods in stock. *Ins. Co.* v. *Rosenberg,* 7 Penn. (Del.) 174, 74 A. 1073, 1075. We quote with approval the observations of the Federal court regarding an untutored method of bookkeeping: "Viewed as 'a set of books' from the standpoint of an expert in that scientific system of bookkeeping which obtains in the business of an insurance company * * * these books in evidence are primitive to a degree which may test his temper if not his skill; but to impartial jurors patiently searching for proof to support a recovery on a contract of indemnity for a loss insured against, and incurred without fraud or fault on the part of the insured, these books tell a plainer story than the expert unconsciously or strenuously looking to them for ground of forfeiture was able to read into them. * * * To our view the very imperfections of these books vouch their good faith." *Western Assurance Co.* v. *Redding,* 68 Fed. 708, 710.

As stated above, the insurance applied only to the wool in the warerooms and no transactions were had which affected that wool *after the bags were numbered, weighed and recorded.* It is, therefore, immaterial whether or not the summary of the business for the year (1931) is complete from the standpoint

of bookkeeping, as long as the summary showed the cost of all wool bought. The provision in the iron safe clause requiring an inventory and the provision requiring a set of books to be kept "should be read and considered together." *Ruffner Bros.* v. *Ins. Co.*, 59 W. Va. 432, 53 S. E. 943. When that is done and the intention of the clause is considered, it will not be construed to require the insured to do so vain a thing as to keep books when there are *no relevant transactions to be recorded in the books.* Insurance policies do not exact a vain thing of the insured. *Jones* v. *Ins. Co.*, 36 N. J. Law 29, 35. The list of the bags stored in the warerooms when supplemented by the cost of the wool furnished by the summary, make *a complete inventory* of the wool insured, "which a person of ordinary intelligence accustomed to accounts can understand". Cooley, *supra*, p. 2818. From those two papers the defendant could ascertain "with reasonable certainty" the quantity of the wool destroyed by the fire and its cost at the date of the inventory. Thereby the purpose of the iron safe clause was accomplished. *Ruffner Bros.* v. *Ins. Co.*, *supra*, 434-5; 26 C. J., subject Fire Insurance, sec. 319.

In explanation of the difference in the total number of pounds shown by the inventory (23,539) and the balance shown by the summary (22,626) plaintiff testified (without contradiction) that wool would vary in weight from time to time. "You cannot weigh wool twice," he said, "and get the same amount." Plaintiff claimed the balance shown by the summary instead of the total shown by the inventory; so defendant was helped instead of prejudiced by the variation in the weight.

The defendant points to evidence that some 10,000 pounds of wool was salvaged from the fire. Plaintiff testified (again without contradiction) that the salvaged wool was taken in charge by defendant's adjuster and that plaintiff had received nothing for it.

Some improper evidence was introduced by plaintiff but its exclusion would not weaken his case in the least and we see no prejudice therein to defendant.

The market value of the wool at the date of the fire was shown to have been from 21 to 22 cents a pound, and the evidence fully supports the judgment, except as to an item of $40.00. Plaintiff announced in his brief and in open court

that the $40.00 was improperly included in the judgment and would be deducted therefrom; so that error becomes inconsequential.

Perceiving no error prejudicial to defendant, the judgment is affirmed.

*Affirmed.*