**DICKERSON v. FRANKLIN NAT. INS.
CO. OF NEW YORK, N. Y.**

No. 4938.

Circuit Court of Appeals, Fourth Circuit.

Aug. 18, 1942.

Sherman H. Ballard, of Union, W. Va., for appellant.

W. E. Miller, of Charleston, W. Va., and William A. Stuart, of Abingdon, Va. (Forrest Roles, of Union, W. Va., and Stanley C. Morris and Steptoe & Johnson, all of Charleston, W. Va., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an action to recover on a fire insurance policy in the sum of $5,000 covering lumber stacked on a saw mill yard in Monroe County, West Virginia. The policy was one of several insuring the lumber in the total sum of $30,000. Upon destruction of the lumber by fire, plaintiff filed proofs of loss, claiming the full amount of the policy and stating that approximately 1,100,000 feet of lumber of a value exceeding $40,000 had been destroyed and, upon refusal of the company to accept liability, instituted action against it for recovery in accordance with the proofs of loss. The company defended on the grounds of incendiarism, failure to keep inventories and books as required by the "iron safe" clause of the policy and false swearing in the proofs of loss. The case was tried before a jury and motion was made by defendant for directed verdict on the ground that the evidence conclusively showed false swearing and failure to comply with the inventory and bookkeeping requirements of the iron safe clause. The motion was denied and the jury returned a verdict for plaintiff in the sum of $1,485.50. The defendant then moved for judgment non obstante veredicto on the grounds assigned in its motion for directed verdict. The trial judge allowed this motion, saying: "I am of opinion (1) that the evidence adduced by the plaintiff was insufficient as a matter of law to show compliance with the 'Iron Safe Clause' of the policy, and that (2) the plaintiff's evidence in the light of jury's verdict showed as a matter of law that the plaintiff violated the condition and warranty in the policy with reference to fraud and false swearing." From judgment on the motion in favor of the defendant the plaintiff has appealed.

The second ground upon which the trial judge based his action can be disposed of briefly. The defense of fraud and false swearing was based upon the contention that the sworn proofs of loss grossly overstated both the quantity and the value of the lumber. There was evidence in the case, however, which, if believed, sustained both the quantity and valuation contained in the proofs of loss. On motion for directed verdict this evidence was to be taken in the light most favorable to plaintiff and all conflicts were to be resolved in his favor. The motion for directed verdict on this ground was, therefore, properly denied; and the motion for judgment n. o. v. on the same ground stands in no better case. See Rule 50(b) of Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and Aetna Casualty & Surety Co. v. Yeatts, 4 Cir. 122 F.2d 350. The finding of the jury did not affect the sufficiency of the evidence to sustain a verdict on plaintiff's contention and was not a matter which could be taken into account on the motion for judgment n. o. v. If it was thought to show a valuation of the property by the jury inconsistent with the right to recover as against the defense of fraud and false swearing, this would furnish ground for setting aside the verdict and granting a new trial in the court's discretion, but not ground for entering a judgment n. o. v., which can be granted under the rule only where the motion for directed verdict should have been allowed.

We think, however, that the judgment was properly entered on the first ground stated by the trial judge, i. e. that the evidence failed to show compliance with the "iron safe" clause of the policy, which contained the following provisions:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured, the unearned premium from such date shall be returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of inventory, as provided for in the first section of this clause and during the continuance of this policy."

The only books or records relied on as a compliance with these provisions are two pages, 34 and 38, of a ledger, containing entries as to hauling of logs and sawing of lumber and certain invoices received from the Coleman Lumber Company covering sales to it of approximately 75,000 feet of lumber. Page 34 of the ledger contains the following entries:

"April, May, June, July, Aug.,
    Sept., Oct., Nov., Dec., Jan.
    1st
1,000,000 ft. @ $2.50 per thousand ...................... $2,500.00
April, May, June, sawed by
    Brooks 365,000 ft. 2.50 per M    912.00
July, sawed by W. W. McCelland, 75,000, 2.50 per M.....    187.50
Aug. Sept. Oct. Haul logs at
    2.50 per M, 300,000......... $  750.00
Skidded with tractor, 150,000
    Per M, @ 2.00.............    300.00"

Page 38 of the ledger contains the following entries:

"Sawing lumber @ $5.00 per
    thousand
    1,000,000 ft. April—37-38
    1,000,000 ft. @ $5.00 per M.. $5,000.00
Sawed by Brooks
April, May, June,
    365,000 ft. @5.00 per M....    1,825.00
July by McCelland
    75,000 ft. @ 5.00 per M.....    375.00
Aug. & Sept., Oct.
    300,000 ft. @ 5.00 per M....    1,500.00
Parker & Mating & Walker
                                _____
                                $8,700.00"

There was parol evidence to the effect that the two 1,000,000 feet entries on page 38 represented the same lumber, which was represented also by the 1,000,000 feet entry on page 34; that this lumber was cut several years before the insurance policy was issued and that only 200,000 feet of it was on the yard at that time. There was evidence, also, that all the other lumber covered by the entries was cut and sawed prior to the issuance of the policy. No records were kept of sales except as to the sale of approximately 75,000 feet to the Coleman Lumber Co., the invoices covering which were preserved. There was parol evidence to the effect that no other

lumber was sold from the lot insured except two loads to a company at Pulaski, Virginia, and local sales of 6,000 to 7,000 feet. About 21,000 feet was removed to a planer located on the property. The lumber was shown to be of different kinds, oak, poplar, chestnut, cucumber, Linn and bass. It was of different grades and the invoices from the Coleman Lumber Company showed prices ranging from $10.00 to $40.00 per thousand feet.

It is settled law in West Virginia that only substantial compliance with the "iron safe" clause is required, that the provisions requiring an inventory and the keeping of a set of books should be construed together, and that these provisions are satisfied when records are kept from which the extent of the loss by fire can be determined with reasonable certainty, without resort to parol evidence except for the purpose of explaining the entries or the manner in which the records have been kept. Kelmenson v. British America Assurance Co., 114 W.Va. 379, 171 S.E. 904; Ruffner Bros. v. Dutchess Ins. Co., 59 W.Va. 432, 53 S.E. 943, 115 Am.St.Rep. 924, 8 Ann.Cas. 866. But it is also well settled that the clause is a reasonable provision of the insurance contract and must be substantially complied with (Fisher v. Sun Ins. Co. of London, 74 W.Va. 694, 83 S.E. 729, L.R.A.1915C, 619, Scottish Union & Nat. Ins. Co. v. Virginia Shirt Co., 113 Va. 353, 74 S.E. 228), and that "the insurer has a right to such a compliance with its terms as will inform him during the life of the policy, fairly and intelligently, as to the stock of merchandise carried by the insured, and, in case of loss by fire, as to the stock of merchandise burned and the fair cash value thereof." Phoenix Ins. Co. v. Sherman, 110 Va. 435, 66 S.E. 81, 83; Kelmenson v. British America Assurance Co., supra.

Assuming without deciding that the preservation of the invoices of sales to the Coleman Lumber Company was a substantial compliance with the requirement as to keeping records of sales, that the sales to the Pulaski Company and the small local sales may be ignored under the de minimis principle and that the removal of the 21,000 feet to the planer was not a matter as to which a record was required to be kept, we are nevertheless of the opinion that the clause was unquestionably breached as the result of the failure to take a proper inventory, from which, in connection with the invoices, the amount of the loss might be determined with reasonable certainty. Such an inventory, within the meaning of the iron safe clause, must contain a list of the articles insured sufficiently itemized to show the kinds and numbers or quantities thereof, "together with their values at the time of making the [inventory], as nearly as they can be ascertained". Ruffner Bros. v. Dutchess Ins. Co., 59 W.Va. 432, 53 S.E 943, syllabus 1, 115 Am.St.Rep. 924, 8 Ann. Cas. 866; 29 Am.Jur. p. 561. While oral testimony is admissible for the purpose of explaining the entries, it may not be received to supply omissions; for this would nullify the provisions. There would be no protection in the requirement of records if their contents could be added to or substracted from by oral testimony based upon the slippery memory of interested witnesses. As said by the Circuit Court of Appeals of the Fifth Circuit in Home Ins. Co. v. Williams, 5 Cir. 237 F. 171, 176: "No particular method of bookkeeping is required, but the books must themselves furnish the information with reasonable certainty, unaided by oral testimony, except as above indicated, to explain the method of keeping them. We apprehend there will be no question of this principle. Outside evidence may be received, the surrounding circumstances, the subject-matter, the location and character of the business, the method of keeping the books, and the evidence of expert bookkeepers to explain the entries found in the books and as to what the books themselves show. But such oral testimony cannot be received to supply omissions in said books."

See also Gershon v. North River Ins. Co., 177 La. 148, 148 So. 10, 92 A.L.R. 368, and note at page 372; Miller v. Home Ins. Co., 127 Md. 140, 96 A. 267, Ann.Cas. 1918E, 384, and note at page 394; Hartford Fire Ins. Co. v. Farris, 116 Va. 880, 83 S.E. 377, and Fisher v. Sun Ins. Co., 74 W.Va. 694, 83 S.E. 729, L.R.A.1915C, 619; Albert v. Colonial Fire Underwriters, 86 W.Va. 204, 102 S.E. 859; notes 39 A. L.R. 1457, 62 A.L.R. 636, 125 A.L.R. 358.

The inventory is the foundation of the bookkeeping required by the policy. Hartford Fire Ins. Co. v. Farris, supra. Its sufficiency must be tested by the purpose for which bookkeeping is required, i. e. to provide a written record from which loss can be ascertained with reason-

able certainty. When so tested, it is perfectly clear that what is offered here as an inventory is no sufficient compliance with the requirement. It contains no itemized list of the lumber on the lumber yard. It contains no showing of the kinds of lumber, although there were a number of different kinds of different values. It contains no showing as to grades or values. And, finally, it does not even show the total of the lumber or contain any data from which the total may be estimated. On the contrary, reliance is placed on entries as to totals paid for hauling and sawing, made months and even years in advance of the issuance of the policy and covering 800,000 feet of lumber admittedly removed from the premises months before the policy was issued. That such records do not constitute an inventory within the meaning of the policy is too clear for argument.

Plaintiff relies particularly upon Kelmenson v. British America Assurance Co., supra, 114 W.Va. 379, 171 S.E. 904, and Lumbermen's Mutual Ins. Co. v. Johnson Lumber Co., 5 Cir. 53 F.2d 940, but neither of these cases tends to support his position. In the Kelmenson case accurate records were kept of wool purchased and the cost thereof; and these constituted a complete and accurate inventory of the insured property. It was held that this was a substantial compliance with the policy. The court [114 W.Va. 379, 171 S.E. 906] said that from the records kept "defendant could ascertain 'with reasonable certainty' the quantity of the wool destroyed by the fire and its cost at the date of the inventory. Thereby the purpose of the iron-safe clause was accomplished." From the records offered in the case at bar it would be absolutely impossible to ascertain the amount of the lumber destroyed, its value or the kind or grade of any part of it to serve as basis of value.

■ In the case of Lumbermen's Mut. Ins. Co. v. Johnson Lumber Co., supra, [53 F.2d 941], the other case particularly relied on by plaintiff, the question held to be for the jury was whether the records presented constituted all the records that insured had and "whether they presented, in substantially complete form, evidence from which the state of plaintiffs' business could be fairly determined." The records presented consisted of invoices and were held to satisfy "the general requirements of the rule as to the character

which such records should have". The court emphasized, however, that the records must be of such character as to furnish a basis for the computation of loss, quoting with approval the following passage from the opinion in Aetna Ins. Co. v. Johnson, 127 Ga. 491, 56 S.E. 643, 9 L.R.A., N.S., 667, 9 Ann.Cas. 461: "The purpose of the requirement was that in case of loss or damage the assured would have kept such book accounts of his invoices, purchases, and sales as would show the amount of goods on hand at the time of the fire, and thus furnish data from which to make a reasonable estimate of the loss or damage." As stated above, no records were offered here from which a reasonably correct estimate of the loss or damage could be computed; and as reasonable men could not differ as to this essential fact, a clear case for direction of a verdict was presented under the well settled rule with regard thereto.

■ There is nothing in the record to show that the provision as to inventory was waived or to estop defendant from asserting as a defense the failure of plaintiff to comply with it. Plaintiff relies upon the fact that the broker through whom he procured the policy wrote him a letter containing the following advice: "In order to be helpful to you I might repeat that some of the things for you to be careful about so that you may be in shape to figure out loss if a fire occurs. Whatever records you have as to the total amount of lumber on the yard ought to be carefully taken care of as a basis for settlement. I believe I told you that you ought to have fairly accurate records of what is trucked out when you begin the removal from the yard. Any adjuster will, in case of loss, want all such records to figure out the amount burned so it is important and vital and to your interest to preserve all records pertaining to the lumber insured." Assuming that the broker is to be treated as the agent of the company, which is by no means certain upon the facts, there is nothing in this letter which can be construed as consenting that the provision as to inventory be disregarded. And even if there were, the provision is a promissory warranty of the policy; and it is well settled in West Virginia that the soliciting agent may not thus waive the requirements of such a warranty. Ch. 33, art. 4, sec. 7, Code of West Virginia, Michie's Code of 1937, sec. 3366; Cooper v. Providence

Washington Ins. Co., 98 W.Va. 655, 658, 127 S.E. 511; Medley v. German Alliance Ins. Co., 55 W.Va. 342, 47 S.E. 101, 2 Ann. Cas. 99.

For the reasons stated the judgment appealed from will be affirmed.

Affirmed.