Dr. Boyd E. P. Dickerson *v*. Great American Insurance Company

(No. 9357)

Submitted October 21, 1942.  Decided December 1, 1942.

*Steptoe & Johnson, Forest Roles* and *William A. Stuart*, for plaintiff in error.

*Sherman H. Ballard*, for defendant in error.

LOVINS, JUDGE:

Dr. Boyd E. P. Dickerson brought an action of assumpsit in the Circuit Court of Monroe County against The Great American Insurance Company to recover on a fire insurance policy in the face amount of $2,500.00, covering lumber owned by plaintiff and situated in his lumber yard near Union, Monroe County. By special plea and specifications of defense, the insurance company defended on three grounds: Incendiarism or fraudulent burning, failure to comply with the record provisions of the "Iron Safe Clause" of the policy, and, fraud and false swearing by plaintiff. This writ of error and supersedeas was granted to the final order of the trial court overruling a motion to set aside a jury verdict for plaintiff in the amount of $733.33 and entering judgment thereon.

From the record it appears that in 1938 plaintiff, a resident of Abingdon, Virginia, purchased a 351-acre tract of timber land in Monroe County, the consideration therefor being stated as $6,084.00. A saw mill was moved on the land and the cutting of timber and manufacturing of lumber began, continuing through 1938 and until October, 1939. On the 1st of April, 1940, plaintiff secured seven policies from two insurance agencies in Alderson, West Virginia, covering the lumber so produced for a period of six months and aggregating in face amount $30,000.00, one of which is the subject of this action. On May 10, 1940, plaintiff conveyed the 351-acre tract to B. B. Caldwell, reserving the right to remove timber and timber products for one year from date of the conveyance. The lumber stored on the Monroe County tract was destroyed by fire on the night of September 27, 1940, three days before the expiration date of the policy issued by the defendant company, as well as the other six policies. In a sworn proof of loss filed with defendant, plaintiff stated that the total insurance on the property covered was $30,000.00; that the cash value of the property, as well as the whole loss and damage, was $43,942.60; and that therefore there should be no apportionment of the loss among the seven insurance companies and each policy should be

paid in full. The verdict of the jury herein, in the amount of $733.33, represents defendant's one-twelfth pro rata share of the total coverage, the jury having found that the total loss was $8,799.96.

The "Iron Safe Clause" of the policy herein involved provides in part as follows:

> "The following covenant and warrant is hereby made a part of this policy:
> "1. The insured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar year months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the insured the unearned premium from such date shall be returned.
> "2. The insured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy."

On the question of inventory of lumber, Dickerson testified that when an agent of one of the insurance companies visited the yard with him in March, 1940, prior to the writing of the policies, one million two hundred feet of lumber were in the yard. In so testifying, Dickerson refreshed his recollection by reference to a ledger page in which he had made certain entries after the fire, according to his testimony, although he also stated he was not sure when such entries were made. Garnet Rainey, who with his father, directed the cutting, logging, sawing and stacking operations for Dickerson, corroborated Dickerson's testimony as to the amount of lumber in the yard in March, 1940, and further testified that in all, two million forty-five thousand feet of lumber were cut off the Monroe County tract. Rainey based his testimony as to these amounts upon the figures appearing on two sheets from a ledger, pages 34 and 38, with reference to the hauling of

logs and sawing of lumber, introduced in evidence as exhibits for the plaintiff. Page 34 shows the following entries:

"Hauling Logs on Truck
April, May, June, July, Aug., Sept., Oct., Nov., Dec., Jan. 1st 1,000,000 ft. @ $2.50 per thousand .................... $2,500.00
April, May, June, sawed by Brooks, 365,000 ft. 2.50 per M. .................... 912.00
July, sawed by W. W. McClelland, 75,000, 2.50 per M. .................... 187.50
Aug. Sept. Oct. Haul logs at 2.50 per M. 300,000 .................... 750.00
Skidded with tractor, 150,000 Per M, @ 2.00 .................... 300.00"

Page 38 of the Ledger contains the following entries:

"Sawing lumber @ 5.00 per thousand 1,000,000 ft. April—37-38 1,000,000 ft. @ $5.00 per M. .................... 5,000.00
Sawed by Brooks
April, May, June, 365,000 ft. @ 5.00 per M. .................... 1,825.00
July by McClelland
75,000 ft. @ $5.00 per M. .................... 375.00
Aug. & Sept., Oct. 300,000 @ 5.00 per M. 1,500.00
Parker & Mating & Walker

8,700.00"

These records were prepared partly by Rainey and partly by his sister, as bookkeeper, from a pocket tab of the log scale made by the person who performed the sawing and which pocket records were gathered and turned over to the bookkeeper.

Taking the second figure of 1,000,000 feet on page 38, as a duplication, as explained by Rainey, the same number of feet of lumber appear on pages 34 and 38, with the exception of the 150,000 "skidded with tractor" on page 34. Defendant in error argues in his brief that "it is fair and proper to assume" that the last entry on page 38, "Parker & Mating & Walker," should be completed by adding such 150,000; also, that it is obvious that such records show the

sawing of the same logs which were hauled on trucks and that the period covered is from April, 1938, to October, 1939. The total number of feet shown on page 34 is 1,890,000.

There is testimony on behalf of defendant in error that in March, 1940, there were eighty-one stacks of rough lumber, twelve or fourteen thousand feet to the stack, amounting to 1,200,000 feet according to the log scale, belonging to Dickerson, including poplar, white oak, red oak, gum and other kinds of timber, cut into four quarter, five quarter, six quarter, eight quarter and two by four, two by six and two by eight framing. The only record of sale or removal of lumber is shown by invoices of the Coleman Furniture Corporation of Pulaski, Virginia, which total about 75,000 feet, and which invoices show the value of such lumber to vary from ten to thirty-eight dollars per thousand feet. Some 20,000 feet were at the planing mill at the time of the fire and not burned. In addition to these two quantities, six or seven thousand feet had been sold locally in small amounts, for which no record was kept.

Defendant in error argues that the actual loss of lumber and the basis of the proof of loss is represented by the 1,200,000 feet on hand when the insurance was taken, diminished by the quantity sold and for which invoices were produced, the six or seven thousand feet sold locally and the quantity which was at the planing mill and not burned. The value claimed is $40.00 per thousand feet, as an average. It is admitted that no amount of juggling of the figures shown on the ledger pages 34 and 38 will produce the 1,200,000 foot figure. However, defendant in error contends that 800,000 feet were removed prior to issuance of the policies and should be subtracted and that a 113,000 foot item appearing in Rainey's testimony, as Dickerson's half of 225,000 feet of "off the boundary" timber should be added. Then, in order to make the totals of pages 34 and 38 coincide it is necessary to ignore an entry of 1,000,000 feet on page 38, as a duplication, and to add an item of 150,000 feet to the same page.

We are immediately confronted with the question of whether these records show a compliance with the pro-

visions of the "Iron Safe Clause", quoted hereinbefore. In this jurisdiction "substantial compliance with the iron safe clause in fire insurance policies is all that is requisite * * *". *Kelmenson* v. *Assurance Co.*, 114 W. Va. 379, 171 S. E. 904. That case also holds that no scientific or particular system of bookkeeping need be followed in making the inventory, and the insured may record the same in his own way and explain the entries in the records or the manner in which they have been kept to show with reasonable certainty the amount of the loss. However, oral testimony cannot be received to supply omissions in such records. See notes, 39 A. L. R. 1457; 62 A. L. R. 636; 125 A. L. R. 358.

It is clear that no effort was made to take an inventory of the stock of lumber twelve months before date of the policy, or thirty days thereafter, as called for in the first paragraph of the Iron Safe Clause. It is conceivable that under the substantial compliance rule, these conditions of the clause in regard to an inventory of rough lumber may be satisfied by other methods, but the hauling and sawing records herein relied upon do not warrant such consideration. The necessity of parol evidence to supply omissions therein is too apparent to merit discussion and even with such assistance, it is difficult, if not impossible to tell with reasonable certainty what quantity of lumber was in the yard at the time of the fire. Conceding the argument of defendant in error that the record of stock in a lumber yard differs from that of a merchant, we perceive no reason why the former should not reveal the kinds, sizes and grades of the lumber on hand, especially where, as here, exhibits of the insured show that lumber was sold according to kind, size and grade. The case at bar differs from the *Kelmenson* case in this particular, since it appeared in that case that all of insured's transactions were in bulk.

Leaving open the question of whether value should appear in the inventory of a stock of rough lumber, under the provisions of the Iron Safe Clause, we believe the records herein discussed are wholly deficient, as the required inventory, in the matters to which reference has

been made, and that such records show non-compliance with the inventory provisions of the clause as a matter of law. It may be that sales and removals from the stock of lumber are shown with reasonable certainty, but under our holding in regard to inventory that question is not reached.

For a similar holding in an action by defendant in error on another of the seven policies hereinbefore mentioned, which originated in the District Court of the United States for the Southern District of West Virginia, see *Dickerson v. Franklin National Ins. Co.* (C. C. A. 4th), 130 F. 2d 35.

By the terms of a policy provision required by Code, 33-4-7, the entire policy "shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." Plaintiff in error asserts that Dickerson swore falsely in claiming a loss of $43,982.60 in his proof of claim and in his testimony at the trial. It is noted that Dickerson and Rainey were the only witnesses for plaintiff who attempted to testify as to total footage and Rainey was the sole witness to fix the value at $40.00 per thousand feet. Several witnesses appeared for plaintiff in error on the question of quantity and value of the lumber, and, without unduly extending this discussion, suffice it to say that the jury apparently accepted their estimates in fixing the total loss at $8,799.96. Reference has hereinbefore been made to the prices at which Dickerson actually sold lumber from the Monroe County lumber yard to the firm in Pulaski. These features and the gross discrepancy between the loss claimed and that found by the jury from the evidence presented, it is asserted, make fraud and false swearing on the part of insured appear from this record as a matter of law.

We cannot agree with this contention of plaintiff in error, for, the evidence presented in this case by defendant in error, if accepted by the jury, would have sustained the proof of loss both as to the quantity of lumber and its valuation. In view of this state of the record, the fact that there was great disparity in the amount claimed and that found by the jury, does not bring this case within the

rule of *Riley* v. *Aetna Ins. Co.*, 80 W. Va. 236, 92 S. E. 417, L. R. A. 1917E, 983, and *Mazzella* v. *Insurance Co.*, 114 W. Va. 728, 174 S. E. 521, both cited by plaintiff in error. In those cases, the evidence and testimony presented by the insurer to show an actual loss of a lesser sum than that claimed by insured's proof of loss was uncontradicted. Therefore, because of the conflict on that point between the evidence of insured and insurer, we cannot say as a matter of law that the insured herein swore falsely.

The jury was instructed to find for the Insurance Company, if they found from a preponderance of the evidence that Dickerson wilfully burned the insured property, or that such property was burned by someone else at Dickerson's request or with his knowledge. Plaintiff in error endeavored to prove incendiarism by testimony of unusual happenings at the lumber yard on the day or the day before the fire, the rather noticeable odor of gasoline or kerosene at the time of the fire, the fact that the fire when discovered was burning uniformly on a whole row of lumber stacks, and other circumstances. This evidence of such suspicious circumstances would have warranted the jury in finding for the insurer under the instruction referred to and we would not be justified in setting aside such a verdict. However, they chose to accept the insured's denials of an intentional burning and their verdict for insured was approved by the trial court. Under settled rules, we cannot disturb the verdict on this ground.

Because of insured's failure to comply, even substantially, with the inventory provisions of the Iron Safe Clause of the policy herein involved, we reverse the judgment of the Circuit Court of Monroe County, set aside the verdict of the jury, and award plaintiff in error a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*