J. H. TOUPKIN, M. D. *Doing Business, etc. v.* FEDERAL INSURANCE COMPANY

(No. 9375)

Submitted February 3, 1943. Decided March 16, 1943.

*William H. Rardin, Steptoe & Johnson, Stanley C. Morris* and *W. E. Miller,* for plaintiff in error.

*J. G. F. Johnson, Somerville & Somerville* and *Musgrave & Blessing,* for defendant in error.

KENNA, JUDGE:

Dr. J. H. Toupkin instituted this action in assumpsit in the Circuit Court of Mason County for the purpose of recovering from the defendant, Federal Insurance Company, three thousand dollars, being the face of a fire insurance policy covering hospital furniture, fixtures, equipment, instruments, supplies, clothing, personal effects and other merchandise located in a frame house in the City of Point Pleasant used by the plaintiff as both a hospital building and dwelling, the fire having occurred on the first day of April, 1940. To a judgment for twenty-three hundred dollars based upon a verdict for a like amount, the defendant was granted this writ of error. The assignments of error, twelve in number, are condensed as follows in the brief of the plaintiff in error which we think adequately covers the questions submitted for decision: (1) Whether a policy provision excluding from the coverage afforded thereby property covered by a chattel mortgage was waived by the insurer due to information allegedly given to its agent in connection with the plaintiff's application and prior to the effective date of the policy, a material part of the allegedly lost and damaged property having admittedly been so encumbered; (2) whether the plaintiff's evidence of true and actual value

at the time of the fire, properly admitted, was sufficient to sustain the verdict; (3) whether the plaintiff as a matter of law was guilty of false swearing in order to sustain his claim; (4) whether certain evidence offered by the defendant in attacking the plaintiff's professional standing and character was wrongfully excluded to the defendant's prejudice; and (5) whether it was error to refuse to direct a verdict for the defendant or to discharge the jury prior to verdict, or to set aside the verdict in favor of the plaintiff due to a tentative report by the foreman of the jury in which it was allegedly stated, in effect, that there was insufficient proof to enable the jury to arrive at the definite amount of the plaintiff's claim, and the court was asked to furnish the jury with the definite figure, the trial judge declined to do so, and directing the jury to consider further of their verdict.

Before discussing the questions of law arising upon the assignments of error, a general statement of the circumstances disclosed of record will make them more easily understood.

When the plaintiff took the stand in January, 1942, he stated that he was thirty-two years of age. He seems to have graduated from a medical school in 1933, and to have devoted the eighteen months immediately following to an interneship in an approved hospital, then to have been commissioned as a member of the United States Army Medical Corps, being assigned to Civilian Conservation Corps duty for ten months. He did "contract practice" for approximately six months before locating in Point Pleasant, in June, 1936. He maintained an office in the business district of Point Pleasant until March, 1939, when he rented a large frame residence which he used as both a dwelling for himself and wife and a hospital, moving his instruments and office equipment, which seem then to have been uninsured, as well as equipment and instruments then purchased, into the building operated as the Mason County Hospital. The building was occupied under a five-year lease for sixty dollars a month, and when the

hospital was opened a technician and a nurse were employed, their salaries being sixty dollars a month each, and also a housekeeper for thirty dollars per month.

In January, 1939, prior to the opening of the hospital, plaintiff borrowed three thousand dollars from the Citizens National Bank, securing it by a chattel mortgage upon the major part of his medical and surgical equipment which was later damaged or destroyed by the fire. On April 14, 1939, the policy upon which this action was brought was written by the defendant, the coverage of which was increased on February 27, 1940, to six thousand dollars, the plaintiff a few days thereafter purchasing another policy written by a different company and covering the same articles for three thousand dollars.

The business of the hospital did not prosper for various reasons, so that when the fire occurred it had no patients, plaintiff was delinquent in the payment of rent, several small judgments had been rendered against him, he had been unable to meet certain periodic payments, and his bank account was negligible.

On the evening of April first, Dr. Toupkin and his wife, between eight-thirty and nine o'clock, had gone to a moving picture, leaving no one in the hospital, the technician and nurse not then being employed. The "flash" fire which caused the damage broke out while they were watching the picture, and when an usher announced that fact to the plaintiff he at first thought, according to his statement, that it was a Fool's Day hoax.

Dealing with the questions submitted in the numerical order heretofore given them, the policy provision relating to chattel mortgages, which the plaintiff in error contends should be construed as a promissory warranty and not as a condition precedent to the coverage of the policy taking effect, reads as follows: "Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this Company shall

be liable only for loss or damage to any other property insured hereunder." It will be seen that the paragraph in question is subject to two constructions, that is to say, as excluding property "insured hereunder while incumbered by a chattel mortgage", or "not liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage", the question being whether the phrase "while incumbered by a chattel mortgage" relates to the phrase "insured hereunder" or to the phrase "loss or damage to any property". It will be observed that there is no comma following the word "hereunder", so that if the adverb (?) "while" immediately following is held to modify the verb to which it is more closely related in space and not separated by punctuation, that word would be "insured". If, on the other hand, the word "while" is taken as an adverb relating to the word "loss", the contention of the plaintiff in error would be maintainable. Cases need not be cited to maintain the proposition that a fire insurance policy, if ambiguous, is to be construed in favor of the insured, so that, even conceding the difficulty that we have attempted to point out amounts to an actual ambiguity, which we think is rather doubtful, we are still of the opinion that the provision against chattel mortgages speaks as of the time that the insurance contract takes effect and operates to prevent coverage during the life of the chattel mortgage. That being so, we further think that the plaintiff testified to circumstances that would justify the jury in concluding that an agent acting as a vice-principal of the defendant insurance company was informed of the existence of a chattel mortgage upon a considerable part of plaintiff's property prior to the issuance of the policy, and that the insurer in following its possession of that information with the issuance of the policy, waived the effect of the chattel mortgage provision. As to the conflicting testimony concerning this question, we are of the opinion that defendant's instructions ten and twelve fairly submitted its contention.

As to the proof of actual value, the record before us

we have found quite confusing due, perhaps, to the unusual nature of the property forming the basis of the plaintiff's claim. The plaintiff used a witness who for a number of years had been the local sales agent for a manufacturing concern that made surgical, medical and hospital supplies and equipment. The witness had sold the plaintiff the property of that nature which he purchased when the hospital was opened in 1939, and was, at the time of his testimony, engaged in the same sort of business in the City of Wheeling. This witness testified that he was acquainted with the value of all or a considerable part of the property involved; that its value new had increased between thirty-five and forty-five per cent from the time of the plaintiff's purchase, and that he also knew its used value due to his experience as a salesman. He used a catalog which gave its price at the time the plaintiff bought and which we believe furnished a gauge of its used market value to a person of the plaintiff's witness' experience. The courts have always had trouble defining market value or market price, the circumstances governing which, of course, vary according to the nature of the property being considered, that frequently sold being more susceptible to the fixing of a market value than that infrequently transferred. Feeling that we can take judicial notice of the unlikelihood of frequent sales of property of the nature of used surgical instruments, there being an absence of authority in the decided cases upon that question, we see no apparent error in the way this question of error was treated by the trial court, and since the presumption operates to sustain his ruling, we so hold. No testimony relating to value was offered by the defendant, and the matter was fully covered by instructions given on its motion.

As to the plaintiff being guilty of false swearing in presenting his claim, we are of the opinion that if the jury had so found, there would, beyond question, be sufficient evidence to sustain that finding. The plaintiff submitted to the insurance company three of what may be

termed statements of loss, the first dated April 16, 1940, only sixteen days following the fire, for the amount of $5519.33; the second, August 16, 1940, in the amount of $7,026.83; and the third, at the trial in January, 1942, aggregating $5265.35. It is difficult to conceive of a person with a fraudulent purpose jeopardizing the validity of a pretended claim with material inconsistencies of this sort, and in other ways that will not be described in detail. The plaintiff, however, offered explanations which were at least partially plausible if believed. No instruction offered by the defendant below was refused, and viewing the question of damage resulting from loss and the claim of damage to injured property as resting at least in part upon the claimant's opinion, we do not believe that there is a sufficient showing of false swearing to decide that question as a matter of law.

As to the attack upon the plaintiff's character, we think that the evidence of the plaintiff himself of his record not having been objected to when offered, though not admissible, does not form the basis for the admission of evidence in rebuttal, although a motion to exclude plaintiff's proof of that nature could have been sustained. Of course, the plaintiff's credibility was subject to attack, but his general character was not an issue, and had it been, it is doubtful that the proof offered of segregated instances, and not matter of opinion, would have been admissible except in contradiction. The rule applicable to criminal cases, of course, is different.

In support of their motion to set aside the verdict, the attorneys representing the defendant in this proceeding, filed their affidavits stating their recollection of what occurred when the jury asked to be further advised by the trial judge, a circumstance which necessarily took place in the judge's presence. According to the version set forth in these affidavits, the jury reported that they had agreed to find for the plaintiff, but "had nothing by which to fix the amount". The foreman of the jury, in an affidavit that was also filed, positively contradicts the substance of the

affidavits tendered on behalf of the defendant, and says that the jury's question of the court concerned only whether the verdict should cover the full amount of the plaintiff's loss, or whether it should be pro rated by dividing equally between the defendant and another company carrying a policy for a like amount upon the same articles. It will be seen that the affidavits permitted to be filed involved a disagreement concerning what took place in the judge's presence and before verdict. Clearly, the settling of a bill of exceptions is the proper method of presenting a controverted question of fact here, but since that point is not raised, we will disregard it. It is true that the affidavits show that the official reporter was not present when the jury requested to be further instructed. It is also true that this record does not show that a bill of exceptions was tendered to the trial judge in order to set forth and make a part of this record his recollection of what took place. The trial judge evidently was not favorably impressed with the affidavits filed on behalf of the defendant. We believe this is a typical instance illustrative of the collateral issues which would inevitably develop if bills of exceptions were ignored as the required implement to include in the record consequential material which would otherwise be dehors, resting their inclusion, in its final analysis, upon an impartial recollection. We do not consider that there is any material appearing of record before us here that would cause us to doubt the correctness of the trial judge's conclusion upon this question.

Although incendiarism was one of the defenses relied upon in the trial court, it is now practically conceded by the defendant that the jury's finding, if not disturbed for another reason, settles that issue. There are quite a number of highly suspicious circumstances that the defendant in no way was restricted from showing. No instruction tendered by the defendant was refused excepting that to direct a verdict in its favor. Defendant was allowed to show that the plaintiff had not left his pet dog in the building that burned upon an occasion when he and his

wife expected to be away for approximately two hours. The defendant has no plausible theory based upon the evidence as to how the fire originated, except that a sterilizer, if connected, could have caused it. The plaintiff meets this theory by showing that he and his wife had left the hospital unoccupied approximately one-half hour before the fire began, and that the sterilizer, if connected before they left would likely have caused a fire much more promptly. It is shown that the plaintiff had quite a quantity of ether, and that it is extremely inflammable. If there had been evidence, either circumstantial or direct, that tended to connect the plaintiff or anyone whose conduct he might have instigated with the origin of the fire, circumstances tending to establish the purpose of a course of conduct would, of course, be pertinent. In the present state of this record, however, we are of the opinion that the defendant, in so far as the questions concerning admissible testimony are involved, has been treated with more than sufficient liberality.

For the foregoing reasons, the judgment of the Circuit Court of Mason County is affirmed.

*Affirmed.*