ALICE MORGAN
*v.*
INSURANCE COMPANY OF NORTH AMERICA
(No. 12094)

Submitted September 6, 1961. Decided December 5, 1961.

*D. Grove Moler,* for appellant. *R. D. Bailey, Bailey, Worrell & Bailey,* for appellee.

CALHOUN, JUDGE:

This case involves an action instituted in the Circuit Court of Wyoming County by Alice Morgan against Insurance Company of North America, a corporation, to recover the sum of $8,000 on a fire insurance policy which became effective November 11, 1959, covering the plaintiff's dwelling and its contents at Hanover on State Route 52 in that county, which dwelling and contents were completely destroyed by a fire on the early morning of February 22, 1960. It was stipulated that, if the plaintiff is entitled to recover, the proper amount of her recovery is $8,000, the full amount of the policy. Apparently the action was commenced prior to July 1, 1960, the declaration being substantially in the form prescribed by Code, 56-4-17; and apparently proceedings after that date were in accordance with the Rules of Civil Procedure.

The defendant filed an answer asserting four defenses, two of which have been abandoned, the remaining two being as follows: (1) That the plaintiff failed to furnish to the defendant a proof of loss as required by the terms of the policy; and (2) incendiarism. These were designated by a pre-trial order of August 24, 1960, as the sole issues to be tried. R. C. P. 16. At a jury trial held on September 29, 1960, at the conclusion of all the evidence, each party made a motion for a directed verdict; and the court directed a verdict for $8,000 in favor of the plaintiff. From the final order of October 17, 1960, by which the trial court directed such verdict, overruled the defendant's motion to set it aside and award a new trial, and entered judgment on the verdict, the defendant prosecutes this appeal.

From the court reporter's transcript of proceedings, it appears that the trial was commenced and concluded on September 29, 1960. The record does not contain

a court order of that date, and apparently no such order was entered. On October 17, 1960, an order was entered, commencing, *"This day* came the plaintiff * * *."* (Italics supplied). That order recites as of that day the appearance of the parties in person and by counsel, joinder of issue, the selection and swearing of a jury, the taking of testimony, the directed verdict, action on the motion to set aside such verdict, and the entry of a final judgment. We have, therefore, the anomalous situation of the transcript disclosing the trial to have been on one date, and a court order indicating that the trial occurred almost three weeks later. Neither party has raised an objection to this irregularity, and, therefore, we do not undertake to weigh the legal consequences thereof. While a *nunc pro tunc* order may be entered under proper circumstances, the order here in question does not purport to be one of that character. *Stephenson v. Ashburn,* 137 W. Va. 141, 70 S. E. 2d 585. It should be observed, however, that failure to make a contemporaneous record of court proceedings may, in some circumstances, become a matter of serious consequence. *Bowles v. Mitchell,* 146 W. Va. 474, 120 S. E. 2d 697. See also *Carpenter v. Commonwealth,* 193 Va. 851, 71 S. E. 2d 377.

The policy contains the following provisions:

"* * * within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, * * *.

"The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or the filing with this Company of an award as herein provided.

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

"The burden of proving compliance with the necessary requirements of an insurance policy as to proofs of loss, or the waiver of such compliance on the part of the company, is on the insured; and, if he fails to establish the same by a preponderance of evidence, his action must fail." *Flanaghan v. Phenix Ins. Co.,* 42 W. Va. 426, syl., 26 S. E. 513. See also *Cooper v. Providence Washington Ins. Co.,* 98 W. Va. 655, pt. 2 syl., 127 S. E. 511.

"Furnishing of the preliminary proofs of loss as required by the conditions of a policy of fire insurance is a *condition precedent* to any right of action thereon, and unless waived an action on the policy does not accrue to the insured until such proofs have been furnished." (Italics supplied). *Morris v. Dutchess Insurance Co.,* 67 W. Va. 368, pt. 3 syl., 68 S. E. 22. To the same effect see: *Rosenthal v. Scottish Ins. Co.,* 55 W. Va. 238, pt. 3 syl., 46 S. E. 1021; *Munson v. German Ins. Co.,* 55 W. Va. 423, 428, 47 S. E. 160, 162; *Adkins v. Globe Fire Ins. Co.,* 45 W. Va. 384, pt. 5 syl., 32 S.E. 194; *Peninsular Land Transportation & Mfg. Co. v. Franklin Ins. Co.,* 35 W. Va. 666, pt. 9 syl., 14 S. E. 237. Failure "to furnish such proof of loss * * * within the given time does not wholly destroy all right of recovery, but only delays right of action; but action upon it cannot be brought until such proof is furnished." *Munson v. German Ins. Co.,* 55 W. Va 423, pt. 5 syl., 47 S. E. 160. See also *Raleigh Hdw. Co. v. Williams,* 106 W. Va. 85, 89, 144 S. E. 879, 880; *Rheims v. Stand-*

*ard Fire Ins. Co.*, 39 W. Va. 672, pt. 3 syl., 20 S. E. 670; *Niagara Fire Ins. Co. of N. Y. v. Raleigh Hdw. Co.*, 62 F. 2d 705.

A party is required to plead "any * * * matter constituting an avoidance or affirmative defense." R.C.P. 8(c). Code, 56-4-21, requires the insurer to plead noncompliance with policy provisions relating to proof of loss. *Antonowich v. Home Life Ins. Co.*, 116 W. Va. 155, pt. 2 syl., 179 S. E. 601; *Rosenthal v. Scottish Ins. Co.*, 55 W. Va. 238, pt. 1 syl., 46 S. E. 1021. Code, 56-4-22, requires the insured to plead "any matter in waiver, estoppel, or in confession and avoidance of any matter" alleged by the insured as stated above. *Christian v. State Farm Mutual Auto. Ins. Co.*, 144 W. Va. 746, pt. 1 syl., 110 S. E. 2d 845. R.C.P. 8(c) requires an affirmative pleading of a "waiver." We need not now decide, and we do not now undertake to decide, the effect of the Rules of Civil Procedure on the two statutory provisions referred to immediately above, because of the fact that the defendant has raised by proper pleading the issue relating to proof of loss, and it was made a proper issue by the pre-trial order; and because of the fact that the record is wholly devoid of any proof of compliance by the plaintiff with the policy provisions pertaining to proof of loss, and likewise devoid of any evidence tending to establish a waiver of or estoppel to assert such policy requirements. Because of the complete lack of proof in this respect, the trial court erred in failing to direct a verdict for the defendant, and likewise erred in refusing to set aside the verdict and to award the defendant a new trial.

By its other assignment of error, the defendant asserts that incendiarism on the part of the insured may be proved by circumstantial evidence and that the evidence was sufficient to make that issue a proper one for the jury. It is clear that "the voluntary and intentional burning of insured property by the insured or by another with his authority, procurement or con-

nivance, will not create a right of recovery upon the policy." 29A Am. Jur., Insurance, Section 1304, page 427. While proof of such a defense involves proof of a crime, it need be only by a preponderance of the evidence, rather than beyond a reasonable doubt as in criminal cases. *Simmons v. Ins. Co.*, 8 W. Va. 474, pt. 10 syl., and pages 496-99.

> "* * * * By the weight of authority, however, such a defense need not be proved beyond a reasonable doubt, a preponderance of the evidence being sufficient. The proof, however, should be clear and satisfactory, taking into consideration the presumption of innocence in such cases, which the evidence must be sufficient to overcome.

> "The defense may be established by direct or circumstantial evidence. Where circumstantial evidence is relied on it must be such as does more than throw a mere suspicion of guilt on plaintiff and the inference or presumption to which the facts proved give rise must be strong and almost inevitable. If the circumstances are such as to be fairly susceptible of two constructions, the one that frees them from the imputation of fraud must be accepted." 46 C.J.S., Section 1359, pages 567-68.

In the case of *Toupkin v. Federal Ins. Co.*, 125 W. Va. 458, 466, 25 S. E. 2d 212, 216, the Court held that the evidence was insufficient to establish the defense of incendiarism, but stated: "If there had been evidence, either circumstantial or direct, that tended to connect the plaintiff or anyone whose conduct he might have instigated with the origin of the fire, circumstances tending to establish the purpose of a course of conduct would, of course, be pertinent." In the case of *Dickerson v. Great American Ins. Co.*, 125 W. Va. 135, 23 S. E. 2d 117, the jury returned a verdict for the insured, but the Court discussed the matter in the following language: "Plaintiff in error endeavored to prove incendiarism by testimony of unusual happenings at the lumber yard on the day or the day before the fire, the rather noticeable odor of gasoline or kerosene at the time of the fire, the fact that the fire when discovered was burning uniformly on a whole row of

lumber stacks, and other circumstances. This evidence of such suspicious circumstances would have warranted the jury in finding for the insurer under the instruction referred to, and we would not be justified in setting aside such a verdict.'' In the case of *Hawkins v. Glens Falls Ins. Co.*, 115 W. Va. 618, pt. 3 syl., 177 S. E. 442, the Court held: ''Proof that the insured property was burned by the willful act of the insured's agent, without more, is not sufficient to defeat recovery on a fire insurance policy on the grounds of incendiarism on the part of the insured.'' The Court did strongly indicate, however, that but for the question of agency, the issue of incendiarism would have been one for the jury.

From authorities cited herein, and from others which we have consulted, it appears clearly that the defense of incendiarism may be established by circumstantial evidence alone. As in other situations, the proof of such defense must do more than establish a basis for mere suspicion, speculation or conjecture; but proof by a preponderance of the evidence is sufficient. In the light of these legal principles, we now proceed to review the testimony, facts and circumstances bearing on the defense of incendiarism.

Alice Morgan, the plaintiff, testified that she is the wife of A. D. Harless, who lived with her in the one-story frame dwelling in question prior to February 21, 1960. About six o'clock on Sunday morning, February 21, 1960, they left their home, each with a suitcase, and went to the home of A. D. Harless' daughter, Memory Keesee, at Branchland, Lincoln County, where they were when the fire occurred about 1:30 o'clock the next morning. A short time previously, the plaintiff had taken two footlockers from her home to the Keesee home. The footlockers belonged to the plaintiff's daughter, who lived in California, and, according to the plaintiff's testimony, they contained wool blankets, quilts, bed sheets, and clothing. The plaintiff had paid Lina Cline $7.00 to transport the footlockers in her automobile to Branchland, pre-

paratory to shipment of them to her daughter in California. The reason for taking the footlockers to Branchland as part of a plan to ship them to California was not clearly explained. The testimony tends to disclose that other items of personal property, of a minor nature, had been removed from the home by the plaintiff prior to the fire.

The plaintiff admitted that on a prior occasion, another dwelling belonging to her had been destroyed by fire while she was absent from home. The fire now in question occurred between three and four months following the effective date of the policy.

Mrs. Lina Cline, a neighbor, testified that the plaintiff came to her home several weeks before the fire, and that in the presence of Mrs. Cline and her adopted son, Francis Earl O'Conner, age eighteen, the plaintiff stated: "Well, I would give anybody a hundred and fifty dollars in spot cash in their hands to let me be gone and burn that old house of mine down." Mrs. Cline testified that following the fire she was advised that A. D. Harless had offered her adopted son $50.00 to burn the house, and that thereupon she made a statement to the plaintiff as follows: "Yes, I told her my boy was under probation; that I had had an awful time and had to spend some money to get him out of trouble, that I was sorry these words were mentioned in front of the child because, I said, 'Kids like money', or some kind of words like that." The adopted son in his testimony related the same offer or statement made by the plaintiff in his presence and in the presence of his adoptive mother. He testified that on another occasion, in the plaintiff's home, A. D. Harless gave him a hat, and "he said he would give me fifty dollars if I would burn the house."

The adopted son was on probation as a consequence of a violation of law in McDowell County. Mrs. Cline at one time consented to have him take a lie detector test, in connection with the burning of the plaintiff's

dwelling, but subsequently withdrew such consent and refused to permit him to take the test.

Estil Morgan, nephew of the plaintiff was questioned concerning an alleged offer by the plaintiff to pay him $200, if he would burn her house. In that connection he testified as follows: "No, sir, I'll just tell the truth. I am on oath. Alice Morgan never did ask me. I ain't that crazy. Of course, I may have said some things to them insurance men. If I did, it was all a mistake. They was up there that time and my wife had been on me, wanting me to tend the baby while she read a true story and I had a bee swarm and I was already mad, trying to put them bees in the gum. If I said anything it was all a mistake." In another portion of his testimony, he stated: "I said if I told them it, it is all a mistake. I weren't under oath. I could tell them anything as long as I wasn't under oath. Just like I told you, I thought I could tell them anything in the world as long as I wasn't under oath."

Francis Earl O'Conner left the home of his adoptive parents during the afternoon of Sunday, February 21, 1960, during inclement winter weather, with the avowed purpose of visiting his natural mother in Baltimore. He testified that, with his cousin, Carl Lester, he rode by bus on February 22 from Welch, West Virginia, to Roanoke, Virginia, where two old women "just let us stay all night free" in their home; that he and Carl Lester hitchhiked from Roanoke to Baltimore, where they spent the night; that this was the first time he ever visited his mother in Baltimore; and that they "got rides" back from Baltimore the next day. In other words, the first time the fire was observed was about 1:30 on the morning of February 22, and, according to his testimony, O'Conner left Welch by bus during the "morning" of that day. He testified that he spent the night of February 21-22 at the home of David Slusser, apparently at or near Davy, McDowell County. Neither Slusser nor Carl Lester testified as a witness at the trial.

The plaintiff testified that the electrical wiring in her home was in good condition. Bottled gas cylinders used in connection with a heating system, were located at the front of the house. The fire was first observed at the rear of and outside of the house, the side of the house hidden from the highway.

Lina Cline and Jesse Cline, her husband, were the nearest neighbors of the plaintiff. Lina Cline testified that the weather was bad, and there was much snow and ice on the night of February 21- 22; that she was wakeful as a consequence of her concern for the safety of her adopted son; that she observed a light at the rear of the plaintiff's house about 1:30 a. m.; that she awakened her husband and they went outside; and that with other persons, they stood in the highway and watched the fire, but did not go nearer than that point. She testified that the blaze first came up from the rear of the house, "the side away from the road."

We believe that we have recounted herein substantially all the facts and circumstances bearing upon the issue of incendiarism. No explanation of the cause of the fire was made or attempted by or in behalf of the plaintiff. Under all the circumstances, the Court holds that the evidence was such that the issue of incendiarism should have been left to the jury for determination and that for this additional reason the trial court erred in directing a verdict in favor of the plaintiff.

For the reasons stated herein, the judgment of the Circuit Court of Wyoming County is reversed, the verdict of the jury is set aside, and the defendant is awarded a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*