877 F.2d 59
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AETNA CASUALTY & SURETY COMPANY, a Connecticut Corporation,
Plaintiff-Appellant,
v.
Buddy Robert SALEM, Carleen Salem, Defendants-Appellees,
and
David Henrick, Defendant.
AETNA CASUALTY & SURETY COMPANY, a Connecticut Corporation,
Plaintiff-Appellant,
v.
David HENRICK, Defendant-Appellee,
and
Buddy Robert SALEM, Carleen Salem, Defendant.
 No. 88-2594.
 United States Court of Appeals, Fourth Circuit.
 Argued May 11, 1989.
Decided June 9, 1989.
 
 William Carol Gallagher (O'Brien, Cassidy & Gallagher, L.C. on brief) for appellant.
 Laurie Lynn Dobkin (Robert P. Fitzsimmons, Fitzsimmons & Parsons, L.C., Jacob M. Robinson, Robinson & Dickinson on brief) for appellee.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 In this diversity insurance action, the only issue presented is whether, under West Virginia law, Aetna Casualty and Surety Co., which seeks to avoid liability under a home insurance policy, has submitted evidence sufficient to prove beyond a "mere suspicion" that the insureds intentionally burned, or caused to burn, their home.
 
 
 2
 The case is a close one as to whether the evidence adduced by Aetna in opposing a summary judgment rose above a mere suspicion. The outcome depends on our gauge of the adequacy of Aetna's evidence. Considering the evidence as a whole, and weighing it against that present in previous somewhat similar West Virginia cases, the district court appears to have moved too fast in granting summary judgment against Aetna.
 
 
 3
 On September 2, 1985, a fire occurred at 214 South Broadway Street in Wheeling, West Virginia, the erstwhile family residence of Buddy and Carleen Salem. They had insured the property with Aetna. David Henrick, a friend of the Salems, was living with them at the time. On the evening the fire occurred, the Salems, along with their children, were staying across the street at 301 South Broadway, where they intended to reside permanently and where they had already moved bedroom furniture.
 
 
 4
 The Salems reported the fire to Aetna, which, because of the size of the loss, proceeded to investigate the fire as to cause and origin. Aetna's investigation determined the cause to be arson, but was unable to locate any eyewitnesses who could positively identify who started the fire. A variety of circumstantial evidence, however, pointed to Henrick and the Salems, and the Salems' insurance claim was denied.
 
 
 5
 Aetna filed a declaratory action in the United States District Court for the Northern District of West Virginia, seeking to avoid liability on its insurance policy with the Salems. The Salems denied the allegations and filed a counterclaim for breach of the insurance policy and for bad faith settlement. Henrick also denied the allegations and counterclaimed for loss of his personal property and bad faith. After discovery, the Salems and Henrick (the "defendants") moved for summary judgment on Aetna's claims and the issue of liability on the counterclaim. The district court granted the motion, finding that Aetna was unable to offer sufficient proof of the defendants' involvement in arson. The court further found no just reason for delay and entered judgment. See Fed.R.Civ.Pro. 54(b). Aetna has appealed.
 
 
 6
 Summary judgment is appropriate when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A nonmoving party must make a showing sufficient to establish the existence of all elements essential to that party's case and on which that party will bear the burden of proof at trial. Id.
 
 
 7
 Under West Virginia law, mere suspicion of the identity of one who burned a house is insufficient to establish an arson defense to a claim against a homeowner's policy. Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W.Va.1986); Morgan v. Ins. Co. of North America, 146 W.Va. 868, 122 S.E.2d 838 (1961). The question before this Court is whether, as a matter of law, Aetna has produced sufficient evidence, viewed in the most favorable light, to cast more than mere suspicion on the defendants. "A party opposing summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986).
 
 
 8
 In support of their motion, the defendants point to the deposition of James R. Hayes, the Aetna supervisor who denied the subject claims. Hayes testified that his belief that the defendants burned the house was only on "suspicion" and could not elaborate as to any factual basis for his theory that the defendants were responsible.
 
 
 9
 Testimony conclusory in nature of Hayes, however, was not as dispositive as the defendants contend it should be treated. It is the attendant facts which control, not one person's opinion, especially when the question is broached at the summary judgment level. Aetna insists that the available circumstantial evidence is sufficient to implicate the defendants.
 
 
 10
 To illustrate, Aetna offered the following evidence:
 
 
 11
 (1) Bud Salem's admission of having received correspondence advising of a $7,600 debt due on his home to which he did not respond.
 
 
 12
 (2) The Salems having been notified that a lump sum payment on the debt was necessary because of previous arrearages.
 
 
 13
 (3) Bud Salem's testimony that he intended to sell the house but did not have an offer at the price he wished for it.
 
 
 14
 (4) The Salems' initiating the vacation of the house for approximately a month before the fire.
 
 
 15
 (5) The night of the fire was the first night the Salems spent away from the house which burned.
 
 
 16
 (6) The exclusive possession by the Salems and Henrick of a key to the front door of the property, and the finding by the fire department of no evidence of forced entry into the house, although Salem testified he had locked the front door as the family left that evening.
 
 
 17
 (7) The loss by Henrick, who was a source of income for the Salems, of his job.
 
 
 18
 (8) Salem's testimony that none of his bills were ever paid on time.
 
 
 19
 (9) Henrick's testimony that he was wearing a maroon coat, dark trousers and a light shirt on the evening in question.
 
 
 20
 (10) The seeing of someone dressed similarly ("bright red or orangish jacket, bright colored, dark pants") going into the house that night.
 
 
 21
 (11) Henrick's statement that he was out that night, and that he denied going into the house.
 
 
 22
 (12) Henrick's further testimony that he never left his car on his return to the vicinity (because he had passed out due to intoxication).
 
 
 23
 (13) Aetna's fire investigator's conclusion that the fire was of incendiary origin, caused by the igniting of flammable liquid.
 
 
 24
 (14) The conflicting statements by Salem to Aetna claims representatives, in which he contended, inter alia, that he had an $8,000 offer as a purchase price for the house when in reality the offer was $5,000.
 
 
 25
 Certainly, the events surrounding the fire are suspicious, yet there is no direct evidence of the defendants' involvement. "Where circumstantial evidence is relied on by an insurer, such evidence must be such as does more than throw a mere suspicion of guilt on the party and the inference or presumption to which the facts give rise must be strong and almost inevitable." Hayseeds, Inc., supra, 352 S.E.2d at 77; Morgan, supra, 146 W.Va. 868, 122 S.E.2d at 841. Nevertheless,
 
 
 26
 incendiarism may be established by circumstantial evidence alone. As in other situations, the proof of such defense must do more than establish a basis for mere suspicion, speculation or conjecture; but proof by a preponderance of the evidence is sufficient.
 
 
 27
 Morgan, 146 W.Va. 868, 122 S.E.2d at 841.
 
 
 28
 In Morgan, the court held that a directed verdict for the insured was error where sufficient circumstantial evidence implicated the insured in the arson of the house. Evidence was introduced showing that the insured, Alice Morgan, was suffering financial difficulties at the time, and that her family had left the house the morning before the fire with various personal belongings. There was also evidence that Morgan had mentioned several times prior to the incident the idea of burning the house down for money and had indeed attempted to solicit several people to do the burning, one of whom was on probation and whose whereabouts were unconfirmed at the time of the fire. No explanation of the cause of the fire was made or attempted on behalf of Morgan.
 
 
 29
 Yet in Hayseeds, Inc., evidence of financial difficulties, compounded by evidence that the fire was due to arson, and the burned building had been locked at the time, while "admittedly a close case," was deemed insufficient to overturn a jury verdict for the insured.
 
 
 30
 Significantly, in the case of Toupkin v. Federal Ins. Co., 125 W.Va. 458, 466, 25 S.E.2d 212, 216 (1943), the court held that evidence of financial difficulty was insufficient to establish the defense of incendiarism but stated "If there had been evidence, either circumstantial or direct, that tended to connect the plaintiff or anyone whose conduct he might have instigated with the origin of the fire, circumstances tending to establish the purpose of a course of conduct would, of course, be pertinent."
 
 
 31
 The issue of sufficiency may turn on agency. As the Morgan court discussed:
 
 
 32
 In the case of Dickerson v. Great American Ins. Co., 125 W.Va. 135, 23 S.E.2d 117, 121, the jury returned a verdict for the insured, but the Court discussed the matter in the following language: "Plaintiff in error endeavored to prove incendiarism by testimony of unusual happenings at the lumber yard on the day or the day before the fire, the rather noticeable odor of gasoline or kerosene at the time of the fire, the fact that the fire when discovered was burning uniformly on a whole row of lumber stacks, and other circumstances. This evidence of such suspicious circumstances would have warranted the jury in finding for the insurer under the instruction referred to, and we would not be justified in setting aside such a verdict." In the case of Hawkins v. Glens Falls Ins. Co., 115 W.Va. 618, pt. 3 syl., 177 S.E. 442, the Court held: "Proof that the insured property was burned by the willful act of the insured's agent, without more, is not sufficient to defeat recovery on a fire insurance policy on the grounds of incendiarism on the part of the insured." The Court did strongly indicate, however, that but for the question of agency, the issue of incendiarism would have been one for the jury.
 
 
 33
 Morgan, 122 S.E.2d at 841.
 
 
 34
 Here, Henrick was not merely the Salems' agent. In his case, in addition to the possibility of sharing in insurance proceeds, the house had been his residence and his personal relationship with the Salems was close and continuing.
 
 
 35
 In sum, we are presented for resolution a set of facts which appears to be on the evidentiary borderline. The cases look both ways, and the Salems and Aetna are somewhere in the middle with none of the cases being altogether decisive. The decision may turn on the availability of some evidence of the extent that mere agency developed into something more--in this instance, the observation that someone dressed similarly to Henrick was in the house that evening. The evidence offered by Aetna is weak, but, viewing it in its best possible light, it appears sufficient to go to the jury. Especially is that so since the dispositive question may be presented under a more penetrating light as to what facts will have in fact been proven at trial. The question is close enough to merit deferring to the later stage of directed verdict, or motion for a judgment non obstante veredicto, rather than the earlier summary judgment stage, the decision which must be made.
 
 
 36
 REVERSED AND REMANDED.